COMMERCIAL UNION INSURANCE
COMPANIES, Plaintiff,

v.

SKY, INC. and Kimberly
Cluck, Defendants.

SKY, INC., Counter–Claimant,

v.

COMMERCIAL UNION INSURANCE
COMPANIES, Counter–
Defendant.

Civ. No. 92–2145.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Dec. 11, 1992.

Douglas M. Carson, O. Ben Core, Daily, West, Core, Coffman & Canfield, Fort Smith, AR, for plaintiff.

Ronald W. Metcalf, Gregory T. Karber, Pryor, Barry, Smith, Karber & Alford, Fort Smith, AR, for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Currently before the court is a motion for summary judgment filed by the plaintiff, Commercial Union Insurance Companies, and responses thereto by the separate defendants, Sky, Inc. and Kimberly Cluck. The court has considered the motion, responses and briefs and is now ready to rule. For the reasons stated below, the court believes that the plaintiff's motion for summary judgment should be granted.

Commercial Union Insurance Companies (Commercial) is a Massachusetts insurance corporation with its principal place of business in Boston, Massachusetts. Sky, Inc. is an Arkansas corporation doing business in Alma, Arkansas, as either Ozark Plaza Motel or Ozark Truck Plaza. Commercial and Sky, Inc. entered into a written contract of insurance, policy number A E R122397, with a policy period from July 15, 1991, to July 15, 1992.

Kimberly Cluck is a resident of Alma, Arkansas, and a former employee of Sky, Inc. during a period from August, 1991, through approximately January 4, 1992. Kimberly Cluck thereafter filed an action against Sky, Inc., alleging that while an employee of Sky, Inc., she suffered sexual harassment from Bob Thurman, another employee of Sky, Inc. Cluck contends that this harassment arose out of and in the scope of her employment with Sky, Inc. and as such constitutes a violation of Title VII. Kimberly Cluck also alleges that the actions attributable to Sky, Inc. give rise to state claims for the tort of outrage and for negligent hiring and supervision. As a result of Cluck's complaint, Sky, Inc. requested that Commercial provide a defense in the sexual harassment action, contending that the policy of insurance issued by Commercial provided coverage for any liability arising from the claims of Kimberly Cluck.

Commercial then filed a declaratory action against the defendants, Sky, Inc. and Kimberly Cluck, seeking declarations by this court that (1) Commercial has no duty to defend Sky, Inc. in the case filed by Kimberly Cluck and (2) the insurance policy issued by Commercial to Sky, Inc. provides no coverage as a matter of law for any liability which may result in that action. Commercial has now filed a motion for summary judgment, asserting that no genuine issue of material fact remains, Commercial has no duty to defend Sky, Inc., and the policy of insurance provides no coverage for sexual liability as a matter of law. Commercial contends that (1) Coverage A of the insurance policy does not provide coverage because there was no "bodily injury" within the meaning of the Coverage A; (2) alternatively, the injury was not caused by an "occurrence" or was "expected or intended from the standpoint of the insured" within the meaning of those terms as used in the Coverage A provisions; and (3) Coverage B of the policy does not provide coverage or excludes coverage because there was no "personal" or "advertising" injury within the meaning of those terms as used in Coverage B.

Sky, Inc, has responded to the motion, contending that (1) an insurer has an obligation to defend its insured within coverage limits of the policy whether or not a duty to pay exists under the policy; (2) the injuries alleged by Kimberly Cluck are either "bodily injury" or "personal injury" as defined in Commercial's policy of insurance; and (3) Bob Thurman, an employee of Sky, Inc., is an additional insured under the insurance policy.

Kimberly Cluck has also responded to the motion, stating that (1) her complaint alleges "bodily injury" within the meaning of the insurance policy sufficient to invoke coverage under the policy; (2) the "expected or intended from the standpoint of the insured" clause of the insurance policy does not exclude coverage for these injuries because the alleged negligence of Bob Thurman was not expected or intended within the meaning of the policy; and (3) her complaint alleges "personal injury" within the meaning of the insurance policy sufficient to invoke coverage under the policy.

■ Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be

decided on purely legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed.R.Civ.P. 56. The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied.

The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Industry Union—Management Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986).

The Eighth Circuit Court of Appeals has advised trial courts that summary judgments should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir.1979), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). The Court has recently reviewed the burdens of the respective parties in connection with a summary judgment motion. In *Counts v. M.K.–Ferguson Co.*, 862 F.2d 1338 (8th Cir.1988), the court stated:

[T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, '[to] point[ ] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339, *quoting, City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273–74 (8th Cir.1988) (citations omitted) (brackets in original).

However, the Court of Appeals for this circuit has also held that the court, in ruling on the motion for summary judgment, must give the non-moving party "the benefit of the reasonable inferences that can be drawn from the underlying facts." *Fischer v. NWA, Inc.*, 883 F.2d 594, 598 (8th Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990), *citing Trnka v. Elanco Products*, 709 F.2d 1223 (8th Cir.1983).

Commercial Union Insurance Company and Sky, Inc. entered into a contract of insurance, policy number A E R122397, with a general liability policy period from July 15, 1991, to July 15, 1992. There are two issues raised by the plaintiff's motion for summary judgment which are before the court for decision: (1) whether Commercial has a duty to defend Sky, Inc. in the sexual harassment action filed against Sky, Inc. by Kimberly Cluck; and (2) whether coverage exists under the general policy of insurance issued by Commercial to Sky, Inc. for liabilities incurred in a sexual harassment action.

a. Duty to Defend Sky, Inc.

■ The "duty to defend [an insured] is broader than the duty to pay damages and cannot always be determined by reference to the complaint." *See State Farm Mut. Auto Ins. Co. v. Hollingsworth*, 759 F.Supp. 1355 (W.D.Ark.1991) (citing *Smith v. St. Paul Guardian Ins. Co.*, 622 F.Supp. 867 (W.D.Ark.1985). "The duty to defend arises 'where there is a possibility that the injury or damage may fall within the policy coverage.'" *Commercial Union Ins. Co. v. Henshall*, 262 Ark. 117, 553 S.W.2d 274 (1977). Thus, there "may be an obligation to defend even though there is no duty to pay." *Equity Mutual Ins. Co. v. Southern Ice Co.*, 232 Ark. 41, 334 S.W.2d 688 (1960). The general rule is that the pleadings against the insured determine the insurer's duty to defend. *Mattson v. St.*

*Paul Title Co. of the South,* 277 Ark. 290, 292, 641 S.W.2d 16, 18 (1982).

These cases hold, however, that there can be situations where the duty to defend cannot be determined solely from the pleadings. The Arkansas Supreme Court has stated that it is enough if the possibility of damages exists; if injury or damage within the policy coverage *could* result, the duty to defend arises. *Home Indem. Co. v. City of Marianna,* 291 Ark. 610, 618, 727 S.W.2d 375, 379 (1987). This court must, therefore, determine if a *possibility of coverage exists,* under the terms of Sky Inc.'s insurance policy with Commercial for liabilities incurred as the result of a sexual harassment action.

### b. Policy Coverage for Sexual Harassment

■ The law is well-settled that a policy of insurance is nothing more than a contract between the insurance carrier and its insured, and is to be governed by the ordinary rules of interpretation of a contract. *Couch on Insurance* § 45: 294 at 620, and *Perkins v. Clinton State Bank,* 593 F.2d 327 (8th Cir.1979). A common sense approach should be used and generally the words employed in the policy are to be understood in their ordinary sense. *Wommack v. United States Fire Ins. Co.,* 323 F.Supp. 981 (W.D.Ark.1971). Of course, the law is also well-settled in Arkansas that ambiguous provisions of an insurance policy will be construed against the insurance company that drafted it. *Aetna Cas. & Sur. Co. v. Stover,* 327 F.2d 288 (8th Cir.1964); *Reiter v. State Farm Mut. Auto. Ins. Co.,* 357 F.Supp. 1006 (E.D.Ark.1973); *Countryside Cas. Co. v. Grant,* 269 Ark. 526, 601 S.W.2d 875 (1980). *See also* the discussion and cases cited at 43 Am.Jur.2d *Insurance* § 283.[1]

■ If a fair reading of the provisions in question indicate that they are plain and unambiguous, the law is that the court will not use a forced construction of the terms of an insurance contract where no ambiguity exists, and must apply the law to the

unambiguous terms. *Benton State Bank v. Hartford Acc. & Indem. Co.,* 452 F.2d 5 (8th Cir.1971); *Peacock & Peacock, Inc. v. Stuyvesant Ins. Co.,* 332 F.2d 499 (8th Cir.1964); *Hardware Dealers Mutual Fire Ins. Co. v. Holcomb,* 302 F.Supp. 286 (W.D.Ark.1969); *Southern Farm Bureau Cas. Ins. Co. v. Williams,* 260 Ark. 659, 543 S.W.2d 467 (1976); and *Arkansas Blue Cross–Blue Shield, Inc. v. Tompkins,* 256 Ark. 370, 507 S.W.2d 509 (1974).

As the Arkansas Supreme Court said in *Rogers v. State Farm Ins. Co.,* 243 Ark. 887, 422 S.W.2d 677 (1968):

We recognize the distinction between the construction to be placed on an omnibus clause extending the coverage of an insurance policy and an exclusionary clause limiting or excluding coverage under a policy. We also recognize the modern trend to broaden coverage under omnibus clauses of insurance contacts, (*Industrial Indemnity Co. v. Continental Casualty Co.,* 375 F.2d 183 (10th Cir. 1967)), but liberal construction should not extend coverage under an omnibus clause, or restrict it under an exclusionary clause, *beyond the plain words and obvious intent and meaning of the words used in the contract.*

*Id.* (emphasis added).

■ The policy of insurance between Commercial and Sky, Inc. provides coverage for two perils. Coverage A provides insurance for bodily injury and property damage liability and Coverage B provides for personal and advertising injury liability. Coverage A contains the following relevant language concerning coverage:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or lia-

---

**1.** For a complete discussion of this court's understanding as to its duty in construing insurance policies, *see Allstate Ins. Co. v. U.S. Fidelity*

*& Guar. Co.,* 663 F.Supp. 548 (W.D.Ark.1987), *aff'd* 846 F.2d 1147 (8th Cir.1988).

bility to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B. This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory."

There is no argument in this case that the alleged sexual harassment resulted in "property damage," and thus, no discussion of property damage coverage is merited. The two defendants, however, assert that actions by Bob Thurman, employee of Sky, Inc., constitute "bodily injury" within the meaning of the policy. Bodily injury, defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," is required by the policy to be caused by an "occurrence," defined as an "accident, including continuous or repeated exposures to substantially the same general harmful conditions." Coverage A also contains specific exclusions, stating that no coverage exists for "bodily injury or property damage *expected or intended* from the standpoint of the insured," or "bodily injury to an employee of the insured *arising out of and in the course of employment* by the insured."

The court believes that the alleged sexual harassment, even if proven to include physical contact between Kimberly Cluck and Bob Thurman of Sky, Inc., cannot be characterized under the terms of this policy as "bodily injury" resulting from an "occurrence." To hold otherwise would be a strained and forced construction of the terms of the insurance policy, something not permitted by the applicable law as shown by the cases cited above.

Kimberly Cluck has alleged that Bob Thurman engaged in "numerous incidents of sexual harassment," both "verbal and physical." Kimberly Cluck's Amended Complaint, para. 5. In no instance does Kimberly Cluck contend that Bob Thurman's actions were anything other than

volitional. Furthermore, it strains the imagination to speculate how a pattern of sexual overtures and touching can be "accidental." *See J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689, n. 17 (1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991) (noting, in dicta, that "the very notion of 'accidental' child molestation is implausible."). There is likewise no contention that Bob Thurman was incapable of forming intent. Thus, the court must determine whether these alleged intentional acts on behalf of Bob Thurman constitute a "bodily injury" resulting from an "occurrence."

Most courts have found sexual molestation to be intentional and excluded from insurance coverage as a matter of law. *See Old Republic Ins. Co. v. Comprehensive Health Care Assoc. Inc.*, 786 F.Supp. 629 (N.D.Tex.1992); *Horace Mann Ins. Co. v. Fore*, 785 F.Supp. 947 (M.D.Ala.1992); *McLaren v. Imperial Cas. & Indem. Co.*, 767 F.Supp. 1364 (N.D.Tex.1991), *aff'd in part*, 961 F.2d 213 (5th Cir.1992); *State Farm Fire & Cas. Co. v. Ezrin*, 764 F.Supp. 153 (N.D.Cal.1991); *Whitt v. DeLeu*, 707 F.Supp. 1011 (W.D.Wisc.1989); *Allstate Ins. Co. v. Foster*, 693 F.Supp. 886 (D.Nev.1988); *Allstate Ins. Co. v. Talbot*, 690 F.Supp. 886 (N.D.Cal.1988); and *Seminole Point Hosp. Corp. v. Aetna Cas. & Sur. Co.*, 675 F.Supp. 44 (D.N.H.1987). *But see State Auto Mut. Ins. Co. v. McIntyre*, 652 F.Supp. 1177 (N.D.Ala.1987). Those courts have relied upon the intentional nature of unwanted sexual advances to conclude that they are not "accidents" but rather intended or expected.

For example, in *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984), the Arkansas Supreme Court found that where a homeowner's policy excludes coverage for personal injury which is "expected or intended" by the insured, the policy exception excludes coverage for injuries which reasonable people would expect or intend to inflict by engaging in the alleged conduct. *Id.* at 92, 666 S.W.2d 689. The court held, therefore, that since plain and ordinary people would expect or intend harm to result from a man sexually molesting his

six-year old stepdaughter for several years, his insurance policy which excludes coverage for "expected or intended" injury does not cover sexual molestation. The court found, therefore, that the insurance company is not required to defend him. *Id.* at 93, 666 S.W.2d 689. The court agreed with the appellate court's finding that any other conclusion "flies in the face of all reason, common sense and experience." *Id.*

Similar reasoning has been extended to sexual harassment cases. In *Old Republic Ins. v. Comprehensive Health Care,* 786 F.Supp. 629 (N.D.Tex.1992), a district court in Texas was faced with a declaratory judgment action arising out of a state court sexual harassment suit, not unlike the situation facing this court. The issue was whether the alleged intentional acts of sexual harassment were "occurrences" within the definition of that term. The court stated that "[i]ntentional or willful acts are not 'occurrences' as that term is commonly defined in insurance policies." *Id.* at 632. The two policies at issue in the matter respectively defined "occurrence" as "those damages neither expected nor intended from the standpoint of the insured" and "an accident including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured." *Id.* at 632–33. After careful analysis, the court determined that identical or substantially similar definitions of "occurrence" have been consistently interpreted by other courts as excluding coverage for intentional acts. *Id.* at 633 (citations omitted). The court found that the insurers did not have a duty to defend the insured in litigation arising out of the sexual harassment claims, writing that "such claims allege intentional acts that are not occurrences for the purposes of policy coverage and there is no duty to defend under the facts of this case." *Id.* at 633.

Likewise in *Sena v. Travelers Ins. Co.,* 801 F.Supp. 471 (D.N.M.1992), the New Mexico district court found that the plaintiff's complaint did not allege an "occurrence" as defined and covered by the Travelers' policy. Lee Sena was employed as bus girl at Urioste's M & M Cafe and brought suit against Mr. Urioste, alleging that he had made sexual overtures to her while she was employed at the Cafe. Mr. Urioste's insurance policy provided coverage for bodily and property damage arising from an "occurrence," defined as "an accident, including continued or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured...." (page citations presently unavailable).

The court found that "the insured's intent to harm can be inferred as a matter of law in cases involving sexual misconduct," holding that allegations of voluntary, deliberate, and intentional sexual misconduct contained in the complaint could not be characterized within the policy definition of an "occurrence." The court concluded that Travelers had no duty to defend the suit by Sena against Mr. Urioste. Recognizing that while in many cases liability insurance may be a sexual harassment victim's only recourse, the court stated that it would "not make a contract of insurance but will only enforce the intent of the insured and insurer as manifested by the writing."

Kimberly Cluck has alleged conduct by Bob Thurman similar to that at issue in the cases cited above. There has been no allegation that the conduct was "accidental" or unintentional, but rather deliberate and intentional. Without determining whether the alleged sexual harassment constituted "bodily injury," and the court believes from the deposition of Kimberly Cluck that it did not, the court concludes that any injury alleged to have been sustained by Kimberly Cluck was not the result of an "occurrence" as defined by the policy. Additionally, the specific exclusions contained in the policy preclude coverage for "intended or expected" acts, clearly supporting the court's conclusion that intentional sexual harassment by the insured is outside the policy's reach. The court holds, therefore, that Coverage A of the policy issued to Sky, Inc. by Commercial does not provide coverage for liabilities incurred as the result of a sexual harassment lawsuit and as

a result, Commercial has no duty to defend Sky, Inc. in the action brought by Cluck.

■ Sky, Inc. and Cluck also contend that coverage may exist under Coverage B of the policy, which contains the following pertinent and relevant language:

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGE A AND B.

No genuine argument exists that coverage for "advertising injuries," as defined by this policy, is available under the facts of this case. Defendants do assert, however, that the actions taken with respect to Kimberly Cluck may constitute "personal injuries" covered by the policy. Personal injury is defined as "injury, *other than 'bodily injury,'* arising out of one or more of the following offenses: false arrest, detention or imprisonment; malicious prosecution; wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies; oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or oral or written publication of material that violates a person's right of privacy. Thus, to establish coverage under the provisions of Coverage B, it must be shown that the acts constituting sexual harassment caused Kimberly Cluck "injury other than bodily injury" *and* that such injury resulted from one of the "offenses" set forth in the policy and listed in the immediately preceding sentence of this opinion. No such showing has been or could be made, so no coverage is provided by "Coverage B" of the policy.

Although it is not pled, Kimberly Cluck has made, in her brief, factually unsupported contentions that she was "imprisoned" or "defamed" and that these alleged "personal injuries" require that Commercial defend Sky, Inc. in the sexual harassment litigation. While the court believes that Kimberly Cluck has failed to present evidence that she was imprisoned or defamed, the court does not believe that these claims, even if true, are severable from the sexual harassment claims, requiring that Commercial defend them. To the contrary, each and every allegation made by Kimberly Cluck arises out of the alleged acts of sexual harassment. Her allegations are not mutually exclusive; they are related and interdependent. Without the underlying sexual harassment claim there would have been no alleged "personal injury" and no basis for a suit against Sky, Inc. for imprisonment, defamation, outrage or negligent supervision. It is clear from a mere reading of the complaint that this is not a "slander" or "false imprisonment" lawsuit. In fact, those terms are not even used and no facts pled to support such causes of action. Furthermore, there has not been any notice that Kimberly Cluck intends to pursue such actions. This case has been pled as a Title VII sexual harassment lawsuit and that is what it is.

The court holds that the alleged sexual harassment does not constitute "bodily injury" arising from an "occurrence" within the meaning of the policy. The court likewise holds that interrelated and interdependent acts of sexual harassment do not constitute "personal injury" as defined by the policy. Thus, the court declares that no coverage for sexual harassment exists under this policy of general liability, and that, since there is no possibility of coverage for this Title VII sexual harassment claim, Commercial has no duty to defend Sky, Inc. against these claims. For these reasons the plaintiff's motion for summary judgment will be granted by separate order entered concurrently herewith.