## Roman Mosaic & Tile Co. v. Aetna Casualty & Surety Co.

C.P. of Delaware County, no. 93-16690.

*Robert B. Mulhern Jr.,* for plaintiffs.
*Frederic L. Goldfein,* for defendant Aetna Casualty and Surety Co.
*Gary C. Bender,* for defendant Pennsylvania Manufacturers Association Insurance Co.

HAZEL, *J.,* May 15, 1997—Plaintiffs Roman Mosaic and Tile Company and Northern Insurance Company of New York filed the present action based upon defendants Aetna Casualty and Surety Company's and Pennsylvania Manufacturers Association Insurance Company's failure to provide coverage for Roman Mosaic in a sexual harassment suit filed by Constance Jesiolowska against Roman Mosaic in federal court. Northern did provide coverage for the lawsuit.

At the conclusion of discovery, plaintiffs and both defendants filed respective motions for summary judgment. Oral argument was held on these motions and by order dated July 31, 1996, this court denied plaintiffs' motion for summary judgment and granted defendants' motions for summary judgment. It is from this order that plaintiffs appeal, thus necessitating this opinion.

A review of plaintiffs' concise statement of matters complained of on appeal reveals that some of the alleged errors committed by this court are a direct consequence of this court's denial of plaintiffs' motion for summary judgment. See paragraphs 3, 4, 5, and 6. The remaining allegations of error directly relate to the basis upon which the court denied plaintiffs' motion for summary judgment and granted defendants' motion. As will be demonstrated in the balance of this opinion, because summary judgment was properly granted to the defendants, this court will not address the errors alleged in paragraphs 3, 4, 5, and 6 of plaintiffs' statement.

It should be noted that the denial of plaintiffs' motion should be not be viewed in a vacuum due to the defendants' motions for summary judgment that were filed. Procedurally, it would appear that the underlying facts of the case are undisputed and therefore, this was not a case where either party was arguing that the present case should proceed to trial but simply that the policy should be read to either include or exclude the underlying suit filed by Ms. Jesiolowska.

To that end, plaintiffs argue that this court erred in denying plaintiffs' motion for summary judgment in that: (1) the allegations of the underlying complaint were within the personal injury liability coverage pro-

visions of the defendants' policies in that the underlying complaint alleged "personal injury" that "ar[ose] out of" one of the enumerated offenses and none of the exclusions apply; (2) the court failed to declare that the claims asserted by Ms. Jesiolowska were covered claims under the defendants' polices, and the defendants breached their policies by refusing to defend Roman Mosaic; (3) the defendants had a duty to defend in the underlying action because the cause of action alleged may have fallen within the coverage of defendants' policies; (4) there is no public policy in the Commonwealth of Pennsylvania that a duty to defend did not extend to claims involving a hostile work environment where the allegations may fall within the coverage of the policy and (5) the defendants' policies specifically provide coverage for "personal injury liability," and "personal injury" was defined in both policies to mean injury "arising out of" certain specified offenses which were alleged by Ms. Jesiolowska in her complaint.

The issue with respect to summary judgment is actually quite simple. Does the complaint filed by Ms. Jesiolowska fall under the personal injury provisions of the policies?[1]

It was agreed by counsel for all parties that the policies of all the insurance companies were identical for purposes of determining this motion. (N.T. 5/13/96 pp. 5-6.) It was generally accepted that there is no Pennsylvania law directly on point with respect to this issue. (N.T. 5/13/96 p. 6.)

---

1. At oral argument, plaintiffs' counsel stated that the only potential applicable provision in this case was the personal injury provision. (N.T. 5/13/96 pp. 6-7.)

The allegations by Ms. Jesiolowska against Roman Mosaic were as follows:

"Count I—Violation of federal statutes (title 7 of the Civil Rights Act of 1964), Count II—Violation of state statute (The Pennsylvania Human Relations Act), Count III—Breach of employment contract, Count IV—Constructive discharge and wrongful termination, Count V—Intentional infliction of emotional distress, Count VI—Outrageous conduct." Plaintiffs' motion for summary judgment, exhibit B.

The complaint is structured so that the factual allegations are set forth in the beginning of the complaint, the actual counts alleged next, and finally, the prayer for relief and damages.

"The relief requested is:

"(1) permanently enjoining and restraining the defendant from the discriminatory practices on the basis of sex and from taking retaliatory action against individuals seeking to exercise their rights under the laws of the United States and the Commonwealth of Pennsylvania; (2) restoring the plaintiff to the status quo ante regarding reinstatement, including back pay, lost earnings capacity and loss of future earnings, etc.; (3) directing the defendant to make the plaintiff whole through compensatory damages in excess of $75,000; (4) directing defendant to make plaintiff whole through an award of punitive damages; (5) directing the defendant to pay statutory liquidated damages; (6) attorney's fees, and costs of suit; and (7) other such relief as the court may deem equitable and proper." Plaintiffs' motion for summary judgment, exhibit B.

As stated above, the underlying factual allegations do not appear to be in dispute, however, the characterization of them does appear to be in strong contention.

The factual allegations, as set forth in the complaint, are that during her employment, the plaintiff in the underlying action was subjected to sexual harassment and discrimination on the basis of her gender in violation of title 7. Plaintiffs' motion for summary judgment, exhibit B, "Factual allegations," paragraph (3). The employer permitted employees to urinate in her work shoes and to make derogatory remarks against the plaintiff's gender (*i.e.,* "slut," "fat pig" and "whore"). Roman Mosaic permitted employees to "physically harass" her by throwing a wheelbarrow at her, placing her in a wire cage and dragging it around the job site, and placing her in a metal drum and rolling it around the job site. *Id.*

Ms. Jesiolowska was the only female mechanic in its employ and the conduct resulted in wrongful termination of plaintiff's position. Plaintiffs' motion for summary judgment, exhibit B, "Factual allegations," paragraphs (5), (6). The conduct also constituted a breach of plaintiff's employment contract particularly as it concerned her medical benefits and pension rights as well as opportunities for future employment. Plaintiffs' motion for summary judgment, exhibit B, "Factual allegations," paragraph (6).

Ms. Jesiolowska sustained "severe and permanent psychological injury by reason of defendants' conduct, and permanent loss of earning capacity, as plaintiff, a skilled tile mechanic, cannot return to work in a male-oriented environment, and defendant has encouraged

and permitted the maintenance of a hostile work environment so as to prevent plaintiff from earning a living in the skilled trade for which she has trained." Plaintiffs' motion for summary judgment, exhibit B, "Factual allegations," paragraph (7).

The personal injury definition as set forth in Aetna's policy reads as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies[.]

"Personal injury is defined as follows:

"'Personal injury' means injury arising out of one or more of the following offenses committed during the policy period:

"(1) false arrest, detention, imprisonment, or malicious prosecution;

"(2) wrongful entry of eviction or other invasion of the right of private occupancy;

"(3) a publication or utterance

"(a) of a libel or slander or other defamatory or disparaging material, or

"(b) in violation of an individual's right to privacy; . . . ." Plaintiffs' motion for summary judgment, exhibit B.

Plaintiffs strenuously argue that the allegations in Ms. Jesiolowska's complaint with regard to her claim for emotional distress fall within the personal injury liability coverage in all respects. A review of the motions and the transcript of the oral argument reveal that the

thrust of the argument is whether or not the injuries arose out of one of the three categories of offenses enumerated in the policy, not whether Ms. Jesiolowska's injuries were "personal injuries."

Plaintiffs make much of the phrase of the "injury arising out of one or more of the following offenses." Plaintiffs claim that "arising out of" means only "but for" causation. See *Forum Insurance Company v. Allied Security,* 866 F.2d 80, 82 (3d Cir. 1989); *Erie Insurance Exchange v. Eisenhuth,* 305 Pa. Super. 571, 574, 451 A.2d 1024, 1025 (1982).

"[A]rising out of means causally connected with, not proximately caused by. 'But for' causation, *i.e.,* a cause and result relationship is enough to satisfy this provision of the policy." *Forum, supra* at 82.

According to plaintiffs, it is not necessary for Ms. Jesiolowska to allege a specific count setting forth a cause of action for one of the described offenses in order for the personal injury section of the policy to apply. Rather, it is only necessary that there be an allegation which may potentially come within the coverage on the basis of a claim of injury arising out of one or more of the specified offenses.

Plaintiffs also allege that the underlying complaint set forth that the injuries arose out of some of the offenses set forth in the personal injury liability section of the coverage, including false imprisonment, publication or utterance of a slander and publication in violation of the individual's right to privacy, reviewing, for instance, Black's Law Dictionary definition of imprisonment. Additionally, plaintiffs argue that urinating

in Ms. Jesiolowska's work shoes and the wheelbarrow being thrown at her are violations of her right to privacy.[2]

In *Erie,* the issue was whether an insurer had a duty to defend based upon the phrase "arising out of the ownership, maintenance or use of an automobile." *Id.* at 574, 451 A.2d at 1025. A police officer shot a passenger who was in a car driven by Erie's insured. *Id.* The insured failed to pay for gasoline at a gas station and was later spotted by the police officer. *Id.* The insured did not stop when ordered by police and subsequently attempted to drive the vehicle toward the officer, which prompted the officer to fire at the car. *Id.* Erie brought a declaratory judgment action to determine that it had no duty to defend and indemnify the driver, its insured, as the injuries did not arise from the ownership, use, or maintenance of a car. The court determined that while " 'but for' causation is enough to satisfy the 'arising out of' language," and that " 'arising out of' means casually connected with, not proximately caused by," the passenger's injuries were caused by a gunshot, not being a passenger in the car. *Id.* at 574, 451 A.2d at 1025. Therefore, Erie had no duty to defend.

In the present case, as in *Erie,* Jesiolowska's emotional distress injuries were not caused by slander, defamation, false imprisonment or the violation of the right of privacy but rather said injuries were caused solely by sexual harassment and gender discrimination. Paragraph three of her complaint against Roman Mosaic was merely descriptions of the acts which Jesiolowska claims con-

---

2. Although plaintiff next discusses the potential exclusions that apply, it is this court's determination that there was no coverage, so it will not discuss the potential exclusions in the policy.

stituted sexual harassment and gender discrimination, *not* false imprisonment, defamation or invasion of privacy. Jesiolowska's motion to intervene further evidences that her complaint only alleged sexual harassment and gender discrimination. Moreover, she made no "count" for false imprisonment or slander.

Simply put, Jesiolowska alleged sexual harassment and gender discrimination against Roman Mosaic.

As evidenced by the discussion of *Commercial Union v. Sky* 810 F. Supp. 249 (W.D. Ark. 1992) later in this opinion, the "but for" standard is not met. The injuries would not have occurred "but for" the sexual harassment as pled in the underlying complaint, not "but for" the false imprisonment, slander and invasion of privacy, which were not pled in the complaint, which would clearly be a strained reading of the complaint. When reviewing the complaint, "[i]t is not the actual details of the injury but the *nature of the claim* which determines whether the insurer is required to defend." (emphasis in original) *Antrim Mining Inc. v. Pennsylvania Insurance Guaranty Association,* 436 Pa. Super. 522, 528, 648 A.2d 532, 535 (1994), *alloc. denied,* 540 Pa. 616, 657 A.2d 487 (1995).

Moreover, while the "arising out of" argument is based upon Pennsylvania law, these cases do not address the issue in the present case directly, while one particular case cited by defendants does so. This court finds the federal case cited by defendant to be persuasive and, in the absence of Pennsylvania case law directly on point with respect to this issue, this court will adopt the reasoning of the Western District of Arkansas in the *Commercial Union* case.[3]

---

3. Of note is the fact that the case of *Kline v. Kemper* 826 F. Supp. 123 (M.D. Pa. 1993), *aff'd,* 22 F.3d 301 (3d Cir.) cites with

In *Commercial Union*, a similar provision to the one that Aetna has in its policy defines personal injury as "false arrest, detention or imprisonment, malicious prosecution and . . . oral or written publication of material that slanders and libels a person." *Id.,* 810 F. Supp. at 255.

The court in *Commercial Union* held that the insurer had no duty to defend Sky Inc. for sexual harassment claims because in order to establish coverage under the personal injury section it must be shown that the acts constituting sexual harassment were caused by injury other than bodily injury (which was an exclusion in the policy) and that such injury resulted from one of the offenses set forth in the policy and listed above. "No such showing has been or could have been made so that there was no coverage provided by . . . the policy." *Id.* at 255.

The court determined that the underlying plaintiff, Cluck, did not plead allegations of imprisonment or defamation except in her brief.

"Although it is not pled, Kimberly Cluck has made, in her brief, factually unsupported contentions that she was 'imprisoned' or 'defamed' and that these alleged 'personal injuries' require that Commercial defend Sky Inc. in the sexual harassment litigation. While the court believes that Kimberly Cluck has failed to present evidence that she was imprisoned or defamed, the court does not believe that these claims, even if true, are severable from the sexual harassment claims, requiring that Commercial defend them. To the contrary, each

approval to *Commercial Union*, although for a proposition other than the one before this court.

and every allegation made by Kimberly Cluck arises out of the alleged acts of sexual harassment. Her allegations are not mutually exclusive; they are related and interdependent. Without the underlying sexual harassment claim there would have been no alleged personal injury and no basis for a suit against Sky Inc., for imprisonment, defamation, outrage or negligent supervision. It is clear from a mere reading of the complaint that this is not a slander or false imprisonment lawsuit. In fact, those terms are not even used and no facts pled to support such causes of action . . . This case has been pled as a title VII sexual harassment lawsuit and that is what it is. . . . The court likewise holds that interrelated and interdependent acts of sexual harassment do not constitute personal injury as defined by the policy." *Id.* at 255.

"Thus, the court declares that no coverage for sexual harassment exists under this policy of general liability[.]" *Id.*[4]

This court has determined that the *Commercial Union* case is identical to the present case, despite plaintiffs' claims to the contrary. Plaintiffs attempt to argue that in the *Commercial Union* case, the court concluded that there was no coverage under the personal injury section because there was no showing that Ms. Cluck suffered an injury other than bodily injury and that

---

4. It is noted that there is a difference in the personal injury provision of Aetna and *Commercial Union. Commercial Union* defined personal injury as something other than bodily injury whereas the Aetna policy does not have that exclusion. However, plaintiffs did not argue the bodily injury provision, nor was there any argument as to what constitutes "injury" in the present case, so the distinction is irrelevant.

such injury resulted from one of the offenses set forth in the policy. The court had noted that Ms. Cluck did not plead that she was imprisoned or defamed and that these were personal injuries, which plaintiffs claim is in contrast to the present case, where Ms. Jesiolowska alleged personal injury that arose out of false imprisonment, oral or written publication of material that slanders or disparages her and violates her right of privacy.

However, plaintiffs in the present case, like Ms. Cluck, did not plead that she was imprisoned or defamed and therefore, despite plaintiffs' heroic attempts to change the contents of the complaint, plaintiffs have not distinguished their case from *Commercial Union.*

A further review of case law reveals that at least two other courts take the same position with respect to the personal injury provision as in *Commercial Union.*

In the case of *Aetna v. First Security Bank,* 662 F. Supp. 1126 (D. Mont. 1987), the court, predicting how the Montana Supreme Court would rule, held that there was no duty to defend under the personal injury provision of the policy. The underlying complaint alleged damages for the torts of bad faith and wrongful termination, not for the torts defined in the personal injury section of the policy: libel or slander or other defamatory or disparaging material. *Id.* at 1132.

"[C]overage under the policy issued by Aetna to First Security must be determined based upon the claims brought by Ervin against First Security. In the instant case, Ervin's claims are for wrongful termination and bad faith. Ervin's complaint in the underlying state court action does not allege any cause of action for defamation. The 'personal injury' endorsement . . . applies only

to claims against the insured actually arising out of the enumerated defamation torts." *Id.*

In *Liberty Bank of Montana v. Travelers Indemnity,* 870 F.2d 1504 (9th Cir. 1989), the personal injury provision is identical in the applicable portions to the provision in the present case. The court in *Liberty Bank,* although making its determination based upon Montana law, referenced the *Aetna* case and stated that it adopted the reasoning and analysis set forth in *Aetna.*

"The pleadings of the private lenders make no reference to any of the elements of a claim for defamation or disparagement, either expressly or by incorporating extraneous materials. Rather, claims of fraudulent misrepresentation, negligent misrepresentation and breach of the implied covenant of good faith and fair dealing were alleged. Although the interrogatory answer sets forth two of the elements of a defamation action: a communication to a third person, and injury to reputation, nowhere does it indicate, even by inference, that the letter contained a falsehood. Because falsehood is an element of defamation, facts which set forth some elements of defamation but not falsehood, when construed in light of a complaint which does not include a cause of action for defamation, do not trigger a duty to defend. Just as in *Aetna,* we find no coverage is provided by the policy." *Liberty Bank, supra* at 1508.

Further, in the case of *Union Pacific v. First Interstate Bancsystems,* 690 F. Supp. 917 (D. Mont. 1988), the court was persuaded by both *Liberty Bank* and *Aetna* and determined that " 'personal injury' coverage applied only to claims actually arising out of the enumerated torts." *Id.* at 918.

Moreover, in the *Kline* case, the court examined whether the insured had a duty to defend for age discrimination allegations under the personal injury provision of the insurance policy. The personal injury provision was defined as: "injury arising out of one or more of the following offenses committed during the policy period: (1) false arrest, detention, imprisonment, or malicious prosecution; (2) wrongful entry or eviction . . . (3) a publication or utterance (a) of a libel or slander in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting, publishing . . . ." *Id.* at 128.

The court concluded that plaintiff could not plausibly argue that he sustained a personal injury as the allegations of age discrimination in the underlying complaint did not result from any of the enumerated torts therein.

Plaintiffs distinguish the *Kline* case in that the plaintiff did not include a claim for intentional infliction of emotional distress and that there was no reference in the court opinion to the specific facts alleged by the plaintiff in the underlying age discrimination action other than a reference to an allegation that employment was terminated on the basis of his age. However, it is clear that the plaintiff in *Kline* did not allege one of the enumerated offenses of the policy and, as discussed above, neither did Ms. Jesiolowska.[5]

5. Furthermore, insurance companies are now offering separate coverage for "Employment practices liability insurance," which includes coverage for sexual harassment claims, among others, see *"Counterpoint," an official publication of the Pennsylvania Defense*

Lastly, with respect to the public policy issue, plaintiff claims that there is no public policy in Pennsylvania that a duty to defend does not extend to claims involving a hostile work environment where the allegations may fall within the coverage of the policy. Although at oral argument the issue of public policy was raised, it is clear that even if there is no public policy that would prevent this court from extending an insurance policy to claims involving a sexual harassment claim,[6] this court does not need to address this issue because it finds that the policy does not, in fact, cover sexual harassment claims regardless of public policy. Because of this determination, this court declines to review a public policy argument. "Only in the clearest cases . . . may a court make an alleged public policy the basis of judicial decision." *BLaST International Unit 17 v. CNA,* 544 Pa. 66, 71, 674 A.2d 687, 689 (1996).

In conclusion, based upon the case of *Commercial Union,* which is directly on point with the present case, this court properly granted defendants' motion for summary judgment, and, for the same reasons, plaintiffs' motion for summary judgment was properly denied.

Institute, "Sexual Discrimination and Harassment in the Workplace: Is it Covered by Insurance under Pennsylvania law?", April 1996. This new coverage appears to further damage plaintiffs' position.

6. It is interesting to note that plaintiffs have moved away from the characterizations of false imprisonment, defamation and invasion of privacy to one of a hostile work environment.