674 A.2d 687

**BLaST INTERMEDIATE UNIT 17, Appellant,**

v.

**CNA INSURANCE COMPANIES and American Casualty Company of Reading, Pennsylvania, Appellees.**

Supreme Court of Pennsylvania.

Argued Dec. 7, 1995.

Decided April 18, 1996.

Michael L. Banks, Julia E. Vaughters, Philadelphia, for BLaST Unit 17.

Walter A. Tilley, III, Leo E. Gribbin, York, Michael P. Tone, Kristi A. Gleim, Chicago, IL, for Am. Casualty Co.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY and CASTILLE, JJ.

### OPINION

NIX, Chief Justice.

Appellant, BLaST Intermediate Unit 17 ("BLaST"), appeals from the Order of the Superior Court which reversed the Orders of the trial court and entered judgment in favor of Appellees, CNA Insurance Companies and American Casualty Company of Reading, Pennsylvania ("CNA").[1] We granted review to address the issue of whether the public policy of the Commonwealth relieves an insurance carrier from its obligation to indemnify the insured for losses incurred as the result of the insured's negligent but good faith violation of a federal statute. For the reasons that follow, we reverse the decision of the Superior Court and reinstate the judgment of the courts of common pleas.

Appellant provides special education and related services to physically and emotionally handicapped children. Appellees provided Board of Education liability insurance to Appellant. Pursuant to this insurance policy, Appellee agreed to pay for any loss [2] that Appellant became legally obligated to pay

---

1. CNA is a holding company for several insurance companies including American Casualty Company of Reading, Pennsylvania.

2. The policy issued by Appellee to Appellant defines "loss" as

any amount which the Assureds are legally obligated to pay or for which the School District may be required or permitted to pay as indemnity to the Assureds, for a claim or claims made against the Assureds for a Wrongful Act and shall include but not be limited to damages, judgments, settlements and costs, cost of investigation and defense of legal actions (excluding from such costs of investigation and defense, salaries of officers or employees of the School District or any other governmental body) claims or proceedings and appeals therefrom, cost of attachment or similar bonds, provided always, however, such subject of loss shall not include fines imposed by law,

because of any claims resulting from its wrongful acts.[3] In 1983, ten female teachers' aides employed by BLaST brought suit in the United States District Court for the Middle District of Pennsylvania against BLaST under the Equal Pay Act, 29 U.S.C. § 206 *et seq.;* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1983 ("section 1983"); and Title IX of the Civil Rights Act of 1964, 20 U.S.C. § 1681. This litigation arose after Appellant hired a male shop assistant at a higher rate of pay than the female teachers' aides. A jury awarded the female teachers' aides a judgment based on their claims under the Equal Pay Act and section 1983. *Arnold v. BLaST Intermediate Unit 17,* No. 83–0300 (M.D.Pa. Aug. 31, 1984).

On appeal, the United States Court of Appeals for the Third Circuit affirmed the judgment under the Equal Pay Act but reversed as to the imposition of liability under section 1983. *Arnold v. BLaST Intermediate Unit 17,* Nos. 85–5449 and 85–5450, 800 F.2d 1131 (3rd Cir. July 24, 1986) ("*Arnold*"). According to the Third Circuit, the female teachers' aides were entitled to the award under the Equal Pay Act because the evidence supported the jury's finding that the jobs performed by the teachers' aides required substantially equal skill, effort and responsibility as the shop assistant and that their duties were carried out under similar working conditions. *Id.* at 18. However, the court held that the award under section 1983 was not warranted because the jury instructions were inadequate to allow the jury to determine whether BLaST had intentionally discriminated against women based on their sex. *Id.* at 20–21.

or matters which shall be deemed uninsurable under the law pursuant to which this policy shall be construed.
(R.R. at 271a–72a).

3. Appellant's policy defines "wrongful act" as

any actual or alleged errors or misstatement or misleading statement or act or omission or neglect or breach of duty by the Assureds in the discharge of their duties, individually or collectively, or any matter claimed against them solely by reason of their being or having been Assureds during this policy period.
(R.R. at 271a).

Appellant used its special education funds to satisfy the full judgment with interest rendered against it as well as the attorneys' fees incurred by the female teachers' aides. Later, an action was filed against Appellant with the Equal Employment Opportunity Commission ("EEOC") and settled by a consent decree. Appellee, which provided liability insurance to Appellant, agreed to pay for the legal fees Appellant incurred in defending the *Arnold* and the EEOC matters. However, Appellee refused to reimburse Appellant for the amount of the judgment rendered against it. Appellant filed the present action seeking indemnification from Appellee for the liability which had been assessed against Appellant.

The court of common pleas granted summary judgment in favor of Appellant on the issue of liability and denied the cross-motion for summary judgment filed by Appellee. *BLaST Intermediate Unit 17 v. CNA Ins. Cos.*, No. 87–00211 (C.P. Lycoming County July 21, 1989). The trial court held that the judgment against Appellant arose due to Appellant's failure to meet a statutory obligation rather than a contractual obligation.[4] *Id.* at 6. As such, it held that Appellant was entitled to reimbursement for its liability pursuant to its insurance policy issued by Appellee. *Id.* The trial court also rejected Appellee's argument that it should not be required to reimburse Appellant on public policy grounds based on this Court's decision in *Central Dauphin Sch. Dist. v. American Casualty Co.*, 493 Pa. 254, 426 A.2d 94 (1981). According to the trial court, because the wages paid to teachers' aides were not governed by constitutional direction, it could not be said that public policy was violated as a matter of law. *BLaST*

---

**4.** Appellant's insurance policy contained several exclusions from coverage including one for "any payment for loss in connection with any claim against the Assureds, and/or the School District ... [f]or any amounts due, under the terms of any contractual obligation...." (R.R. at 284a). Because the loss was found to have arisen as the result of a statutory rather than contractual obligation, this exclusion would not apply. Moreover, Appellee does not argue that it should not be required to indemnify Appellant based on an exclusion in the policy. Appellee argues before this Court only that public policy precludes indemnification.

*Intermediate Unit 17 v. CNA Ins. Cos.*, No. 87–00211, slip op. at 7–8 (C.P. Lycoming County July 21, 1989).

Appellant later filed a motion for summary judgment as to the amount of damages to which it was entitled. The trial court granted its motion holding that Appellant was entitled to indemnification for its losses arising under the *Arnold* and EEOC actions plus six percent interest. *BLaST Intermediate Unit 17 v. CNA Ins. Cos.*, No. 87–00211 (C.P. Lycoming County May 14, 1993).

The Superior Court reversed the Orders of the courts of common pleas, holding that it would contravene public policy to require Appellee to reimburse Appellant for a loss which was the result of Appellant's violation of a statute. *BLaST Intermediate Unit 17 v. CNA Ins. Cos.*, No. 430 Harrisburg 1993, slip op. at 3–4 (Pa.Super. Apr. 8, 1994). The Superior Court cited *Central Dauphin Sch. Dist. v. American Casualty Co.*, 493 Pa. 254, 426 A.2d 94 (1981), in support of its holding. According to the Superior Court, to hold that Appellant had suffered a loss would allow a school district or political subdivision to commit unlawful acts and recover any resulting penalty through its insurance coverage. *BLaST Intermediate Unit 17 v. CNA Ins. Cos.*, No. 430 Harrisburg 1993, slip op. at 4 (Pa.Super. Apr. 8, 1994). Because Appellant did not suffer an insurable loss, the Superior Court held that the trial courts had erred as a matter of law in granting Appellant's motions for summary judgment. *Id.*

■ In reviewing the trial court's grant of summary judgment, "[a]n appellate court may disturb the order of the trial court only where there has been an error of law or a manifest abuse of. discretion. Notwithstanding, the scope of review is plenary and the appellate court shall apply the same standard for summary judgment as the trial court." *Cooper v. Delaware Valley Medical Ctr.*, 539 Pa. 620, 632, 654 A.2d 547, 553 (1995).

■ We granted review to determine whether the public policy grounds announced in *Central Dauphin Sch. Dist. v. American Casualty Co.*, 493 Pa. 254, 426 A.2d 94 (1981),

should be extended to the instant matter. However, this Court will not lightly invalidate a contract when an assertion is made that the contract violates public policy. As we recently reasserted in *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 648 A.2d 755 (1994):

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.... Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision.

*Id.* at 348, 648 A.2d at 760 (citation omitted). If the same public policy grounds are present in the instant matter, the Superior Court properly reversed the trial court. Otherwise, the trial court was correct in holding that the money Appellant became obligated to pay as a result of the *Arnold* matter constituted a loss. Thus, BLaST was entitled to reimbursement from Appellee and summary judgment was properly granted.

Appellant first argues that there is no public policy reason for excusing Appellee from honoring its contractual obligation to pay for the loss incurred as a result of Appellant's good faith violation of a discrimination statute. According to Appellant, *Central Dauphin Sch. Dist. v. American Casualty Co.*, 493 Pa. 254, 426 A.2d 94 (1981), is limited to cases of taxation and the Superior Court read that case too broadly. Appellant further argues that it would not be unjustly enriched by indemnification nor would indemnification encourage other insureds to intentionally violate the law. It is Appellant's position that its insurance policy should be enforced as written because doing so would not contravene any clear public policy. In support of its position, Appellant also asserts that as a public entity it has a statutory right to insure itself against its wrongful actions as well as an obligation to protect the public funds from potential liability.

Appellee claims that indemnification for the payments made by Appellant as a result of its statutory violation would unjustly enrich Appellant by allowing it to retain the proceeds of its unlawful conduct. Appellee also cites this Court's decision in *Central Dauphin* in support of its position that Appellant is not entitled to indemnification on public policy grounds. Appellee asserts that based on *Central Dauphin*, Appellant could not have sustained a loss because it was not legally entitled to the money it now claims as a loss.

In *Central Dauphin*, the Central Dauphin School District ("the school district") issued a resolution which imposed a tax on people over eighteen years of age who lived in the district. After the tax was collected, certain taxpayers brought suit challenging the validity of the school district's resolution. The court of common pleas struck down portions of the resolution and directed the school district to refund the taxes collected. The school district did not appeal this decision and began to refund the unlawfully collected taxes.

The school district sought from its insurance carrier the amount of revenue it had illegally collected and was ordered to refund to taxpayers. In finding that the school district had not sustained a loss within the meaning of its insurance policy, this Court stated that

the public policy of this Commonwealth would be offended by permitting a political subdivision to use public funds to purchase "insurance" against court-ordered and statutorily-mandated refunding of taxes collected through an unlawful taxing measure.... A district would be able to subject its citizens to an unlawful tax measure like the one imposed here, and yet in effect retain the proceeds of the unlawful tax simply by recovering on the claimed insurance coverage.

*Central Dauphin Sch. Dist. v. American Casualty Co.*, 493 Pa. at 259, 426 A.2d at 96. We further held that even though the school district had acted negligently rather than in bad faith, it could not avoid the consequences of its unlawful tax measure through its insurance. *Id.* at 260, 426 A.2d at 97. This was so because taxation must strictly comply with constitutional and

statutory provisions. *Id.* Thus, we found that the school district had not suffered a loss within the meaning of its insurance policy because the public policy of this Commonwealth does not allow unlawful taxing measures to produce revenue in the same way lawful taxation does. *Id.* To hold otherwise would allow a taxing body to impose unlawful taxes upon its citizens yet retain the proceeds of that tax by recovering on its insurance policy. *Id.* at 259, 426 A.2d at 96.

Although the instant matter presents us with facts which may appear similar to those we were confronted with in *Central Dauphin,* the two cases are distinguishable, and *Central Dauphin* is not dispositive of the case at bar. BLaST's statutory violation can not be condoned; however, it does not raise the same public policy concerns as the Central Dauphin School District's unlawful taxing measure.

In *Central Dauphin* we were faced with the potential for school districts, or any political subdivision, to unlawfully collect taxes and receive the amount of such taxes from an insurance carrier after the taxes had been refunded. Because the tax was unlawful, the school district was never entitled to revenue from the taxes. Clearly, there was no loss to the school board; rather, the school board would have realized a windfall if allowed to collect from its insurance carrier after refunding the taxes. It was obviously against public policy to allow the school district to use unlawful activity as a money-making endeavor.

In the instant matter, BLaST did suffer a loss, and there is no legitimate public policy reason which should disallow this loss under BLaST's insurance coverage. Although BLaST did violate a statute, it will not receive a windfall upon indemnification by CNA for this violation. Unlike the school district in *Central Dauphin,* indemnification will not place BLaST in a better position than it was in prior to the judgment against it. BLaST is not being permitted to earn revenue through violation of a statute. In contrast, the school district in *Central Dauphin* would have been permitted to do so had we allowed it to receive indemnification from its insurance carrier for the unlawfully collected taxes. Moreover, allowing Appellant to

collect under its insurance policy will not encourage others to intentionally engage in unlawful activity with the purpose of reaping a benefit from such activity through its insurance. Our holding today extends only to those statutory violations which are negligent.

We also agree with Appellant's argument that the purchase of insurance by a public entity for losses resulting from its negligent actions should be encouraged. Without such insurance, a public entity would be forced to satisfy its legal obligations with its own resources because it would be uninsurable for statutory violations whether intentional or not. It would be counterproductive to fund a public entity with taxpayer funds without allowing the entity to protect against the depletion of such funds through the purchase of insurance.

We hold, therefore, that the Superior Court had no basis for finding that the trial courts had erred as a matter of law in enforcing Appellant's obligation to indemnify Appellant for the loss it incurred as a result of its negligent but good faith violation of the Equal Pay Act. Accordingly, the Order of the Superior Court is reversed and the Orders of the trial courts are reinstated.

CAPPY, J., concurs in the result.