**LINCOLN COUNTY AMBULANCE DISTRICT, Plaintiff/Respondent,**

v.

**PACIFIC EMPLOYERS INSURANCE COMPANY, Defendant/Appellant.**

No. ED 72333.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 20, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 18, 1998.

Application for Transfer Denied
April 22, 1998.

James W. Childress, Jerry R. Wilding, Holtkamp, Liese, Beckemeier & Childress, P.C., St. Louis, for appellant.

Brian E. McGovern, Elaine M. Moss, McCarthy, Leonard, Kaemmerer, Owen, Lamkin & McGovern, L.C., Chesterfield, for respondent.

SIMON, Judge.

Pacific Employers Insurance Company (Pacific) appeals from an order and judgment entered by the Honorable Patrick J. Clifford on March 28, 1997, granting Lincoln County Ambulance District's (Lincoln) motion for summary judgment and denying Pacific's motion for summary judgment.

On appeal, Pacific contends that the trial court erred in granting Lincoln's motion for summary judgment and denying Pacific's motion for summary judgment in that: (1) the claims made by Lincoln are not covered under the policy issued by Pacific; (2) requiring payment of Lincoln's claims constitutes unjust enrichment and is against public policy; (3) waiver and estoppel will not bring coverage to a risk that is not covered by an insurance policy; and (4) the prior adjudication of the case and the coverage issue required the trial court to grant Pacific's motion for summary judgment. We affirm the judgment and note that the denial of Pacific's motion for summary judgment is not appealable. *D.L. Erickson v. Pulitzer Publishing Co.*, 797 S.W.2d 853, 857 (Mo.App. E.D.1990).

The facts are not in dispute. Our review is essentially *de novo. ITT Commercial Finance v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[4]. The criteria on appeal for testing the propriety of summary judgment are no different from those used by the trial court. *Id.* at 376[5]. The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 378[9]. The non-movant must show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more material facts shown by movant to be above any genuine dispute is, in fact, genuinely disputed. *Id.* at 381[17].

The record indicates that Pacific issued Errors and Omissions (E & O) insurance policies to Lincoln from 1987 through 1995 through its managing agent Volunteer Firemen's Insurance Services (VFIS). In addition to the E & O policies, comprehensive general liability (CGL) policies were issued to Lincoln, providing coverage for the treatment and transport of patients and included coverage for errors and omissions which occurred during treatment.

The E & O policy provided in pertinent part:

### THE COVERAGE

1. INSURANCE AGREEMENT AND CLAIMS MADE CLAUSE

TO PAY ON BEHALF OF THE INSURED ALL SUMS WHICH THE INSURED BECOMES LEGALLY OBLI-

GATED TO PAY AS "DAMAGES" AS A RESULT OF CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD BY REASON OF ANY ACT, ERROR OR OMISSION IN PROFESSIONAL SERVICES RENDERED IN THE DISCHARGE OF DUTIES IN THE CONDUCT OF THE INSURED'S CAPACITY AS INDICATED IN ITEM 3 OF THE DECLARATIONS.

Item 3 of the Declarations defines the insured's capacity in the following manner:

NAMED INSURED'S CAPACITY: AMBULANCE & AMBULANCE

The policy also includes a section entitled "Definitions" which does not define "professional services," but provides the following definitions:

1. The term "Insured"

(a) the Named Insured:

(b) any officer, director, trustee and/or commissioner of the Named Insured or other person acting in a similar capacity, but only while acting within the scope of the official duties as such

(c) any individual member of the Named Insured, but only while acting in the scope of his official duties as such.

2. The word "damages" means any amount which any insured is legally obligated to pay for any claim to which the insurance applies and shall include judgments, settlements and claim expenses; provided always that damages shall not include fines or penalties imposed by law or other matters which may be deemed uninsurable under the law pursuant to which the policy shall be construed.

\* \* \*

Further, the E & O policy contains twelve specific exclusions, disclaiming in pertinent part:

1. the rendering or failure to render medical or paramedical services, first aid or other such medical assistance;

2. the use or operation of equipment or supplies used in any diagnostic or testing procedures or for treatment or support;

3. the furnishing, dispensing, or application of drugs, oxygen or other medical dental or surgical supplies or appliances;

\* \* \*

5. the violation or alleged violation of any municipal, state or federal civil rights law, regulation or ordinance;

6. any strike or other labor disturbance;

7. the Employee Retirement Income Security Act of 1974, Public Law 93–406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto, or similar provisions of any Federal, State or Local Statutory or Common Law;

\* \* \*

In July 1991, Sherry Masterson and others (employees) filed a complaint in the United States District Court for the Eastern District of Missouri, Case No. 91–0533–C–4 (the Masterson Litigation) against Lincoln pursuant to 29 USC Section 207, Fair Labor Standards Act (FLSA). Employees alleged that Lincoln violated the FLSA by classifying sleep and meal time as non-compensable time for purposes of calculating overtime. Lincoln tendered the defense of the Masterson litigation to Pacific.

On July 30, 1991, a claims representative for Pacific informed Lincoln that it would begin an investigation of the case and assign defense counsel of its choice in St. Louis, but was generally reserving its rights under the policy. On September 26, 1991, Pacific sent a second reservation of rights letter to Lincoln. Pacific continued to defend Lincoln in the Masterson litigation until September, 1994.

On September 9, 1994, Pacific sent a third letter to Lincoln, stating:

We have reviewed the allegations and discovery completed to date in light of

the development of the law ... After conducting this review, we must advise you there is no coverage for the allegations contained within the complaint.

Under the DEFINITION section:

2. The word "damages" means any amount which an Insured is legally obligated to pay for any claim to which this insurance applies and shall include judgments, settlements, and claim expenses; provided always that damages shall not include fines or penalties imposed by law or other matters which may be deemed uninsurable under the law pursuant to which the Policy shall be construed.

The relief or damages prayed for by Lincoln do not meet the definitional requirements of "damages" as cited above. The damages as prayed for would be uninsurable as against public policy.

As there is no coverage under the terms of your policy, we will be withdrawing from the defense and indemnification of this litigation. . . . .

Pacific Employers Insurance Company does not intend to waive any of its rights or contractual defenses under the insurance policy because a provision of the policy was not addressed specifically in this letter. The company relies on each and every reason mentioned in this letter for the denial of coverage and on all of its rights (whether or not mentioned in this letter), as well as on all of the terms, provisions, conditions, and limitations of policy number VAPG1393455-1.

The Masterson litigation was set for trial on October 25, 1994. Lincoln requested a continuance as a result of the withdrawal of its defense counsel. The trial commenced on February 21, 1995, and concluded February 24, 1995. The district court found that Lincoln had not acted wilfully and refused to submit the issue of wilfulness to the jury. The jury returned a special verdict that, although Lincoln's employees had impliedly agreed to the exclusion of sleep and mealtime for their compensation, such time was "bona fide" and was hence compensable under the FLSA. The district court entered a judgment accordingly.

Subsequently, Lincoln filed a petition in the circuit court seeking a declaration that the contract language and the specific exclusions delineated within the contract were intended to cover claims resulting from errors or omissions of Lincoln's officers or directors. Cross-motions for summary judgment were filed requesting a declaration as to whether the claims asserted in the Masterson litigation were covered under the E & O policy of insurance issued by Pacific.

On June 30, 1995, the trial court granted Pacific's motion for summary judgment and denied Lincoln's motion. Lincoln filed an appeal and, during the appeal process, the parties learned that their underlying motions for summary judgment were premised on the wrong policy of insurance in that the policy supplied by Pacific contained form UW–191a, but the declarations page stated that the policy included form UW–191, not UW–191a. Lincoln filed a motion to vacate judgment and remand to the trial court because the policy relied on by the trial court was not the policy applicable to the Masterson litigation. Pacific did not object and Lincoln's motion was granted, vacating the judgment and remanding the case for further proceedings.

On remand, the parties filed cross motions for summary judgment. In support of its motion for summary judgment, Lincoln produced the affidavit of John Lenk, the chief operating officer of Lincoln. In support of its motion for summary judgment, Pacific did not submit any affidavits, but submitted copies of the following documents: the insurance policy; the complaint filed by the employees in the Masterson litigation; its September 9, 1994 letter to Lincoln denying coverage; the June 30, 1995 order granting Pacific's motion for summary judgment and denying Lincoln's motion for summary judgment; the January 16, 1996 order of this court vacating the June 30, 1995 order by the

trial court; and a copy of Lincoln's 1993–1994 Errors and Omissions Policy issued by INA, which excludes coverage for claims for back wages, overtime, etc. On March 28, 1997, the trial court entered an order granting summary judgment for Lincoln and denying Pacific's motion for summary judgment.

■ In its first point on appeal, Pacific contends that the trial court erred in granting Lincoln's motion for summary judgment because the claims made by Lincoln are not covered under the plain language of the policy. Pacific argues that there is nothing ambiguous about the terms of the policy which limits coverage to claims made against Lincoln arising out of "any act, error or omission in professional ambulance services rendered." Lincoln argues that, under the coverage section of the policy, the term "professional services" is ambiguous.

An insurance policy must be construed as a whole, and every clause must be given some meaning if it is reasonably possible to do so. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo.banc 1992). Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written. *Id.* Courts will not create an ambiguity to distort the language of an unambiguous policy. *Id.* However, where provisions of an insurance policy are ambiguous, the rules of construction will apply and ambiguous provisions will be construed against the insurer. *Id.* An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. *Id.* Language is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layperson who bought and paid for the policy. *Id.* Therefore, if an ambiguity exists, the language of the policy will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy. *Haggard Hauling v. Stonewall Ins. Co.*, 852 S.W.2d 396, 399 (Mo.App.1993). Ambiguous provisions will be interpreted against the insurer. *Id.*

The policy's definition of "insured" includes "any officer, director, trustee and/or commissioner of the Named Insured or other person acting in a similar capacity, but only while acting within the scope of the official duties as such" and specifically excludes coverage for: the rendering or failure to render medical or paramedical services, first aid, etc.; the furnishing, dispensing, or application of drugs, oxygen, etc. The policy does not define the term "professional services" as found in the insuring agreement clause. Further, the policy that is included as part of the record on appeal redundantly provides "Ambulance & Ambulance," in defining Lincoln's capacity.

In support of its motion for summary judgment, Lincoln produced the affidavit of John Lenk, who stated that Lincoln purchased the E & O policy to cover management liability. Lenk also stated that the summary of the insurance program VFIS gave to Lincoln provided in pertinent part that the E & O policy did not apply to liability arising out of the rendering or failure to render medical or paramedical services as this coverage was already provided by the CGL policy issued to Lincoln by VFIS. Lenk understood that the professional services covered by the policy were those services provided by its officers and directors acting in their official capacities.

Pacific did not respond to Lincoln's motion, but filed its own motion for summary judgment. In support of its position, Pacific cited *Jefferson Ins. v. National Union Fire Ins.*, 42 Mass.App.Ct. 94, 677 N.E.2d 225 (1997), in which Jefferson Insurance Co. (Jefferson) sued National Union Fire Insurance (National) for contribution to the defense and settlement of a tort action against an ambulance company. Jefferson had issued an "Ambulance Attendants Er-

rors & Omissions" policy (E & O policy) to the ambulance company which covered damages "arising out of the performance of services ... in connection with ... [the] business of ambulance service." *Id.* at 227. Jefferson defended the ambulance company against a tort action for negligent delay in providing ambulance services. There was no dispute that the delay was occasioned by miscommunication between the company's radio dispatcher and the ambulance attendants regarding the address to which the ambulance was told to respond to and Jefferson eventually settled the claim. *Id.*

During the pendency of the action, Jefferson asked National to contribute to both the defense and settlement based on National's CGL policy issued to the ambulance company during the year in which the incident occurred. *Id.* National denied coverage based on its CGL policy exclusion of coverage for "the rendering or failure to render ... medical ... or nursing services [or] any service or treatment ... of a professional nature." *Id.* Jefferson commenced a declaratory judgment action and, subsequently, the Appeals Court of Massachusetts held that the term "professional services" was ambiguous and found coverage under National's CGL policy. *Id.*

This case is unlike *Jefferson* in that the policy at issue in that case was a CGL policy. Here, we are dealing with an E & O policy that specifically excludes the professional services at issue in *Jefferson* from coverage. Further, the task at issue in *Jefferson* (dispatching an ambulance to the proper address) did not require professional judgment or skill as does that exercised in the management of an ambulance service. See *Medical Records Associates, Inc. v. American Empire Surplus Lines Insurance Co.*, 1997 WL 528117 (D.Mass.). Therefore, *Jefferson* is distinguishable and of no assistance. Here, since the term "professional services" is not defined and the rendering of medical or paramedical services and the failure to render such

services are specifically excluded, the term "professional services" is ambiguous.

Lincoln's management, in establishing a wage agreement with its employees, excluded meal and sleep time for the purpose of calculating the employee's overtime compensation. Since "professional services" are not defined in the policy, we look to Webster's Collegiate Dictionary, Tenth Edition, 930 (1995) which defines "professional" as "of, relating to, or characteristic of a profession or calling" and "service" as "an act done for the benefit or command of another." "Profession" is defined as a calling requiring specialized knowledge and often long and intensive academic preparation or as a principal calling, vocation or employment. *Id.* Clearly, managing an ambulance service is an act done for the benefit or command of another and is characteristic of a profession. Therefore, in construing this term in the context of the entire E & O policy, we find Lincoln's claim to be covered. Point denied.

In its second point on appeal, Pacific argues that the trial court erred in granting Lincoln's motion for summary judgment because requiring payment of Lincoln's claims would constitute unjust enrichment and is against public policy.

■ Unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust. *Chicago Title Ins. Co. v. Mertens*, 878 S.W.2d 899, 902[2] (Mo.App. E.D.1994).

■ Here, Lincoln bought an E & O policy for its directors and officers from Pacific and paid a premium in exchange for Pacific's agreement to insure Lincoln for all sums which it became liable to pay as damages resulting from any act, error or omission by any of its directors or officers. Pacific drafted the contract and had ample opportunity to exclude coverage. Therefore, Lincoln paid for the benefit it received and there is no unjust en-

richment. *Landmark Systems, Inc. v. Delmar Redevelopment Corp.*, 900 S.W.2d 258, 262 (Mo.App. E.D.1995).

In support of its position that Lincoln's claim is against public policy, Pacific relies on *Central Dauphin School District v. American Casualty Co.*, 493 Pa. 254, 426 A.2d 94, 96 (1981). However, the Supreme Court of Pennsylvania in a later case, *BLaST Intermediate Unit 17 v. CNA Ins.*, 544 Pa. 66, 674 A.2d 687, 690 (1996), distinguished its decision in *Central Dauphin* and we find that analysis informative.

In *BLaST*, ten female employees brought suit against BLaST, a provider of special education and related services to physically and emotionally handicapped children, in federal district court under the Equal Pay Act, 29 U.S.C. 206 *et seq.*, and other federal statutes. The women received a judgment based on their Equal Pay Act claims and BlaST used its own funds to satisfy the judgment. BLaST's insurer, CNA, agreed to pay BLaST's legal fees, but refused to reimburse BlaST for its payment of the judgment. BLaST sued CNA seeking indemnification for its payment of the judgment under the Equal Pay Act. The case was appealed to the Supreme Court of Pennsylvania, who began by noting that it would not "lightly invalidate a contract when an assertion is made that the contract violates public policy," and proceeded to analyze *Central Dauphin*.

In *Central Dauphin*, the Central Dauphin School District issued a resolution which imposed a tax on people over eighteen years of age who lived in the district. After the tax was collected, certain taxpayers brought suit challenging the validity of the school district's resolution. The court of common pleas struck down portions of the resolution and directed the school district to refund the taxes collected. The school district did not appeal this decision, began to refund the unlawfully collected taxes, and sued its insurance carrier for the amount of revenue it had illegally collected and was ordered to refund to tax-

payers. In *Central Dauphin*, 426 A.2d at 96, the Pennsylvania Supreme Court stated:

the public policy of this Commonwealth would be offended by permitting a political subdivision to use public funds to purchase "insurance" against court-ordered and statutorily-mandated refunding of taxes collected through an unlawful taxing measure.... A district would be able to subject its citizens to an unlawful tax measure like the one imposed here, and yet in effect retain the proceeds of the unlawful tax simply by recovering on the claimed insurance coverage.

Further, the court held that even though a school district had acted negligently rather than in bad faith, the school board could not avoid the consequences of its unlawful tax measure through its insurance because taxation must strictly comply with constitutional and statutory provisions. *Id.* at 97. Thus, the court found that the school district had not suffered a loss within the meaning of its insurance policy because the public policy of the Pennsylvania does not allow unlawful taxing measures to produce revenue the same way lawful taxation does. *Id.* To hold otherwise would allow a taxing body to impose unlawful taxes upon its citizens yet retain the proceeds of that tax by recovering on its insurance policy. *Id.* at 96.

The Supreme Court did not condone BLaST's statutory violation, but found that BLaST's violation of the Equal Pay Act did not raise the same public policy considerations as Central Dauphin School District's unlawful taxing measure. *BLaST*, 674 A.2d at 690. The court reasoned:

In *Central Dauphin* we were faced with the potential for school districts, or any political subdivision, to unlawfully collect taxes and receive the amount of such taxes from an insurance carrier after the taxes had been refunded. Because the tax was unlawful, the Central Dauphin School District was never entitled to the

revenue from the taxes. Clearly, there was no loss to the school board; rather, the school board would have realized a windfall if allowed to collect from its insurance carrier after refunding the taxes. It was obviously against public policy to allow the school district to use unlawful activity as a revenue-making endeavor.

In the instant matter, BLaST did suffer a loss, and there is no legitimate public policy reason which should disallow this loss under BLaST's insurance coverage. Although BlaST did violate a statute, it will not receive a windfall upon indemnification by CNA for this violation. Unlike the school district in *Central Dauphin,* indemnification will not place BLaST in a better position than it was in prior to the judgment against it. BLaST is not being permitted to earn revenue through violation of a statute. In contrast, the school district in *Central Dauphin* would have been permitted to do so had we allowed it to receive indemnification from its insurance carrier for the unlawfully collected taxes. *Id.* at 691.

Therefore, the Supreme Court of Pennsylvania, noting that *Central Dauphin* addressed different public policy concerns, held that its state's public policy did not relieve an insurance carrier from its obligation to indemnify the insured for losses incurred as the result of BLaST's negligent but good faith violation of the Equal Pay Act. *Id.*

Here, Pacific cites no constitutional, statutory, or judicial authority other than *Central Dauphin* in support of its position that insurance coverage for Lincoln's payment of damages for its violation of the FLSA is against public policy. Although Lincoln violated the FLSA, a federal wage statute, it did not act wilfully and will not receive a windfall upon indemnification by Pacific. Likewise, we conclude that to permit reimbursement of the loss to Lincoln under its E & O policy would not violate Missouri public policy.

Further, the E & O policy in this case specifically excluded all claims arising from "the violation or alleged violation of any municipal, state or federal civil rights law, regulation or ordinance" or "the Employment Retirement Income Security Act of 1974 ... or similar provisions...." Pacific had the opportunity to exclude claims arising under FLSA, but failed to do so. Point denied.

In its third point on appeal, Pacific alleges that the trial court erred in granting Lincoln's motion for summary judgment because waiver and estoppel will not bring coverage to a risk that is not covered by the insurance policy.

█ Pacific correctly states the general rule that waiver and estoppel are not available to bring risks within the coverage of an insured's policy that are not covered by its terms or are excluded from that policy. *Holland Corp., Inc. v. Maryland Cas. Co.,* 775 S.W.2d 531, 534[4] (Mo.App.1989). However, estoppel may be used to preserve policy coverage. *Lawrence v. New York Life Ins. Co.,* 649 S.W.2d 461, 465 (Mo.App.1983). Since we find coverage for Lincoln's claim, we conclude that this point is not meritorious.

█ In its final point on appeal, Pacific argues that the trial court erred in granting Lincoln's motion for summary judgment because, under the theories of res judicata or collateral estoppel, a prior adjudication of the case and the coverage issue required the trial court to grant Pacific's motion for summary judgment. Pacific also argues that the trial judge erred in considering the deposition testimony of Larry Baker, the claims adjuster for the Masterson litigation, because collateral estoppel prevented Lincoln from alleging new facts in its motion for summary judgment.

Here, the first judgment was vacated and the case was remanded for further proceedings. Therefore, nothing was left upon which to preclude further litigation of the matter. *Ogle v. Guardsman Ins. Co.,*

701 S.W.2d 469, 471 (Mo.App. E.D.1985).
Point denied.

Judgment affirmed.

ROBERT G. DOWD, Jr., P.J., and
HOFF, J., concur.