**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut corporation, Plaintiff,**

v.

**U.S. NATURAL RESOURCES, INC., a Delaware corporation, Defendant.**

**Civ. No. 94–875–MA.**

United States District Court, D. Oregon.

July 25, 1995.

Bruce C. Hamlin Lane Powell Spears Lubersky, Portland, OR, for plaintiff.

James C. Tait, Oregon City, OR, for defendant.

## OPINION AND ORDER

MARSH, District Judge.

Plaintiff Hartford Accident and Indemnity Company ("Hartford") brings this action for breach of contract against its insured, defendant U.S. Natural Resources, Inc. ("USNR"), seeking reimbursement for the deductible portion of a settlement by Hartford on a personal injury claim. The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

The case is before me on the parties' cross-motions for summary judgment (## 17 and 30). After considering the parties' arguments and the evidence, Hartford's motion is GRANTED and USNR's cross-motion is DENIED.

## BACKGROUND

Hartford, an insurance company, issued a special broad form comprehensive general liability policy (the "CGL policy") insuring USNR for the period beginning August 1, 1986, and ending August 1, 1987. USNR and numerous companies and divisions affiliated with USNR, including Irvington–Moore, a division of USNR, were "named insureds" under the policy.

In May 1986, USNR entered into a contract with Temple–Eastex, Inc. ("Temple–Eastex"), for the sale and installation of certain machinery at a sawmill being built for Temple–Eastex in Texas. The contract between USNR and Temple–Eastex included an indemnity clause and a clause requiring USNR to maintain certain insurance.

The indemnity clause, paragraph 6.2 of the contract, provided that USNR would indemnify Temple–Eastex, Mid–South Engineering Company, their respective employees, or their duly authorized agents for all liability claims or other actions for injuries sustained during installation or due to any negligent act or omission on the part of USNR. The

indemnity clause excluded liability arising out of the sole omission, commission or negligence of Temple–Eastex, Mid-south Engineering Company, their respective employees, or their duly authorized agents.

The insurance clause, paragraph 25 of the contract, provided that work would not begin until Temple–Eastex had been furnished with and approved all required insurance and had been provided with certificates of insurance confirming that the required insurance was in effect and that it had been endorsed to prevent cancellation, non-renewal, or material alteration without 30 days written notice to Temple–Eastex. Among the types of insurance required by the contract was public liability insurance, including comprehensive general liability insurance covering premises-operations, independent contractors, and products/completed operations hazards, and personal injury liability insurance.

The public liability insurance clause of the contract also provided that the policy be endorsed to name Temple–Eastex Incorporated, any Temple–Eastex subsidiary company, and their respective officers, directors, employees, agents and assigns as "additional insured." The endorsement was to provide that coverage was primary and non contributory to any other insurance carried by Temple–Eastex.

The CGL policy issued by Hartford to USNR contained a special broad form comprehensive general liability endorsement, Form L–4819–0, section XVII of which was entitled "Additional Persons Insured—Required by Contract or by Issuance of a Permit." This section stated that the "Persons Insured" provision was amended to include as an "insured" any organization to whom the "name insured" was obligated to provide insurance pursuant to a written contract. This section also provided that, if the contract took effect during the policy period, rather than on or before the effective date of the policy, the named insured must notify Hartford within 180 days after the effective date of the contract. Further, section XVII specified that the additional insured would only qualify as an "insured" with respect to operations performed by or on behalf of the "named insured" or facilities owned or used by the "named insured."

After entering into the USNR/Temple–Eastex contract, USNR asked Hartford's agent, Rollins Hunter Burdick ("Rollins"), to issue a certificate of insurance and send it to Temple–Eastex. Sam Gillette, a broker at Rollins, acting on behalf of USNR, issued the certificate to Temple–Eastex as requested. The certificate states that "[c]ertificate holder is included as additional insured as respects the worldwide operations of the named insured."

In July 1987, a few months after the certificate was issued, Marvin Richardson claimed to have sustained injuries while working at the sawmill being built for Temple–Eastex in Texas. An investigation revealed that at the time of the incident [1], a USNR employee was supervising Richardson while he was using a ladder belonging to a division or affiliated company of USNR. Richardson brought an action for personal injury against Temple–Eastex and its subsidiary, Temple Associates.

Defense of the Richardson claim was tendered to both Hartford and USNR. Both declined to accept the tender on the ground that the indemnity clause of the USNR/Temple–Eastex contract did not require USNR to defend or indemnify Temple–Eastex for its sole negligence. In April 1992, Temple–Eastex and Temple Associates, through their liability insurer, Highlands Insurance Company ("Highlands"), settled Richardson's claims for $1.1 million. After reevaluating its position and concluding that Temple–Eastex was a "person insured," Hartford contributed $550,000 toward the settlement. Hartford then sought reimbursement of the $250,000 deductible from USNR. USNR refused to pay. The parties do not appear to dispute that the amount at issue, *i.e.*, the unpaid deductible less credits, is $228,143.45, plus

---

1. Richardson actually had two separate accidents. The worst evidently involved a fall from an allegedly defective ladder. Although Hartford initially sought reimbursement from USNR for two deductibles because there were two separate occurrences, it now seeks reimbursement for only one.

interest at the rate of nine percent per annum from at least April 29, 1992.[2]

## STANDARD

Summary judgment is appropriate if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.1989).

All reasonable doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Company of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

## DISCUSSION

Hartford and USNR each offer their own interpretations of the CGL policy. Hartford construes the policy as providing the same coverage to Temple–Eastex as it provides to USNR and its affiliates. USNR, in contrast, contends that Temple–Eastex is not insured under the CGL policy at all, or if Temple–Eastex is insured, it is insured only to the extent that USNR is obligated to indemnify it under the indemnity clause in the USNR/Temple–Eastex contract. In other words, USNR argues that the insurance coverage as to Temple–Eastex and the indemnity provision of the contract are co-extensive and, thus, Temple–Eastex is not covered for damage or injuries caused by its own negligence.

Hartford also contends that resolution of the coverage issue is not necessary to a decision in its favor, because it acted properly and within its authority under the CGL policy in settling Richardson's claim. For its part, USNR also contends that (1) Hartford either waived its right to assert or is estopped from asserting that Temple–Eastex is covered against its own negligence under the CGL policy; (2) Temple–Eastex's and Temple Associates' settlement payment satisfied the deductible; and (3) Hartford's alleged bad faith in settling Richardson's claim without first notifying USNR or obtaining its consent precludes reimbursement of the deductible.

I. *The Extent of Temple–Eastex's Coverage as an "Additional Person Insured" Under USNR's CGL Policy.*

The parties agree that Oregon law governs their rights and responsibilities under the CGL policy. Under Oregon law, the interpretation of an insurance policy ordinarily is a question of law for the court. *See, e.g., Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or. 464, 469, 836 P.2d 703 (1992). The " 'primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties.' " *McLeod v. Tecorp International, Ltd.*, 318 Or. 208, 215, 865 P.2d 1283 (1993), *quoting Totten v. New York Life Ins. Co.*, 298 Or. 765, 770, 696 P.2d 1082 (1985). In interpreting an insurance policy, the court must first examine "the text and context of the policy as a whole, to determine whether the policy's text and context answer the question that is posed." *McLeod*, 318 Or. at 215, 865 P.2d 1283.

As an initial matter, I must address USNR's argument that Temple–Eastex is not an additional "person insured" because the policy was never endorsed to add Temple–Eastex. While a written endorsement might normally be required to add to the "persons insured" under the policy, section XVII of the endorsement, which relates to "Additional Persons Insured," does not require an actual written endorsement for cov-

2. Hartford initially asserted that interest should accrue from April 13, 1992. USNR has suggest-

ed April 29, 1992, and Hartford has accepted that date.

erage to be effective. Section XVII contains two requirements for an organization to become an "additional person insured": (1) the named insured must be obligated "by virtue of a written contract * * * to provide insurance such as is afforded by this policy"; and (2) the named insured must notify Hartford within 180 days after the effective date of the contract. Both of those requirements were met with respect to Temple–Eastex in this case.

■ The issue, then, is whether under the CGL policy "additional persons insured" are covered to the same extent as named insureds under the CGL policy. The policy defines "Persons Insured" to include the named insured (USNR and its affiliates) and certain other categories of persons not relevant to this case. Section XVII of the special broad form endorsement, *amended* the "Persons Insured" provision to include "as an insured" any organization the named insured is required to insure by virtue of a contract or agreement. Thus, Temple–Eastex qualifies as an "insured" under the plain language of the CGL policy.

This is significant because the policy also states that "[t]he insurance afforded applies separately to each *insured* against whom claim is made or suit is brought, except with respect to the limits of the company's liability * * *." Nothing in that language, or in any other provision of the policy, purports to provide any different coverage for "additional persons insured" than is provided for the named insured. Indeed, the plain language suggests that coverage is identical for each person or organization that qualifies as an insured.

This interpretation is consistent with other courts' interpretations of similar insurance provisions. In *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251 (10th Cir.1993), for exam-

ple, the Tenth Circuit determined that a clause adding additional insureds "but only with respect to liability arising out of" the named insured's operations covered the additional insured for its own negligence. *Id.* at 254–55; *see also Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1109–10 (5th Cir.1991) (court held that a clause providing coverage to additional insured "as required by contract" and "with respect to operations performed by or for the named insured" covered additional insured for its own negligence); *Philadelphia Elec. Co. v. Nationwide Mut. Ins. Co.*, 721 F.Supp. 740 (E.D.Pa. 1989) (court held that, absent express language in policy limiting coverage to liability arising out of policyholder's negligence, it would not infer such a limitation).

Nothing in the language of the insurance clause or any other provision of the USNR/Temple–Eastex contract ties the insurance requirements to the indemnity clause, nor did the parties discuss such a limitation when the USNR/Temple–Eastex contract was negotiated.[3] The Rollins broker who handled the USNR account, Sam Gillette, did not see a copy of the USNR/Temple–Eastex contract and was never told to limit the certificate of insurance in any respect not stated on the certificate.

■ I conclude that the CGL policy is unambiguous,[4] and that it provides coverage to Temple–Eastex as an "additional person insured" to the same extent that it provides coverage to any other "insured." Although the Oregon courts do not appear to have addressed this issue, I also conclude that an Oregon court applying ordinary rules of contract interpretation would reach the same conclusion.

■ The conclusion that Temple–Eastex was covered for its own negligence under the policy does not, however, end the inquiry.

3. Richard Ward, USNR's president, testified in deposition that there was no discussion about whether the insurance benefitting Temple–Eastex would correspond to the indemnity provisions. Although Ward now suggests otherwise in his affidavit, a party cannot create issues of fact by an affidavit contradicting sworn testimony. *Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406, 1410 (9th Cir.1987).

4. Because the policy language is unambiguous, its interpretation is a question of law. In interpreting the meaning of an insurance contract, the policy should be read as a layperson would read it rather than as an expert would analyze it. *20th Century Ins. Co. v. Liberty Mut. Ins. Co.*, 965 F.2d 747, 751 (9th Cir.1992). Accordingly, I agree with Hartford that expert testimony on the meaning of the policy is unnecessary.

USNR argues that Richardson's claims do not fall within the language of section XVII of the endorsement which provides that Temple–Eastex was included as an insured, but only with respect to operations performed by or on behalf of the named insured or facilities owned or used by the named insured.

The undisputed facts, however, show otherwise. Richardson alleged in his personal injury action that, at the time of his accident, he was an employee of International Machinery Erectors, a named insured under the CGL policy. At the time of the accident, Richardson was being supervised by a USNR employee, was using USNR equipment, and was working at the Temple–Eastex mill in connection with the USNR/Temple–Eastex contract. I conclude that Richardson's claims and the circumstances of his accident triggered application of the CGL policy.

In summary, I conclude that Temple–Eastex was covered as an "additional insured person" under USNR's CGL policy for purposes of Richardson's claims, and that the coverage afforded by the policy was not limited to Temple–Eastex's vicarious liability for acts of the named insureds.

II. *USNR's Waiver and Estoppel Arguments.*

USNR asserts that Hartford has waived its right to claim that Temple–Eastex is entitled to coverage for its own negligence, or is estopped from making that claim by certain statements of its broker, Sam Gillette. USNR relies on a letter written by Gillette in May 1989, after the certificate of insurance was issued and after Richardson brought his personal injury action, in which he states:

> It was also our understanding that the purpose of the certificate that was issued to Temple Eastek [sic] was to cover the negligent acts of USNR employees while on premises or job sites controlled by Temple Eastek. The certificate was not intended to pick up the negligent acts of the Temple Eastek employees.

Gillete Affid., Ex. B.

Turning first to the question of whether Gillette's statements are binding upon Hartford, Oregon law provides that "any person who solicits or procures an application for insurance shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer." O.R.S. 744.165. I will assume for purposes of these motions that Gillette, in making the statement in question, was acting as Hartford's agent.

The next question is whether, as a result of Gillette's statement, Hartford has waived or is estopped from asserting that the CGL policy covered Temple–Eastex for its own negligence. Waiver is the intentional relinquishment of a known right. *Brown v. Portland Sch. Dist. # 1*, 291 Or. 77, 84, 628 P.2d 1183 (1981). Intent must be expressed by a 'clear, unequivocal and decisive act.' *Id.* (citation omitted). Equitable estoppel, a somewhat different concept, requires (1) a false representation; (2) made with knowledge of the facts; (3) to a party ignorant of the truth; (4) made with the intention that it will be acted upon by the other party; and (5) the other party is induced to act upon it. *Welch v. Washington Cty.*, 314 Or. 707, 715, 842 P.2d 793 (1992). The party asserting estoppel must demonstrate that its reliance on the representation was reasonable. *Id.* at 716, 842 P.2d 793.

First, I find that Gillette's letter is equivocal in that he specifies that his opinion is based only upon his recollection and that all his "backup data" is in the files held by his former employer. Thus, as a matter of law, Gillette's letter does not constitute an intentional relinquishment of a known right. USNR has also failed to set forth evidence that it changed its position in reliance upon Gillette's representation. Gillette made the statement upon which USNR relies well after the issuance of the certificate of insurance, therefore the statement had no impact upon USNR's decision to obtain insurance. Thus, USNR has failed to establish a critical element of its estoppel claim.

Accordingly, I find that USNR has failed to establish that Hartford waived or is estopped from asserting its claim that Temple–Eastex is covered under the CGL policy for its own negligence.

III. *USNR's Argument that Highland's Payment of Part of the Settlement Satisfied the Deductible.*

■ USNR contends that Highland's payment toward the settlement on behalf of Temple–Eastex and Temple Associates satisfied USNR's obligation to reimburse Hartford for the deductible. USNR's theory appears to be that if Temple–Eastex is an "insured" under the CGL policy, then it should be obligated to pay the deductible.

I agree with Hartford that the plain language of the CGL policy defeats USNR's argument. The CGL policy is a contract between Hartford and the "named insured," *i.e.,* USNR and its affiliates. The policy itself makes this clear: "[T]he Insurer * * * agrees with the *named insured* as follows * * *." (Italics in original). With respect to the deductible, Hartford, as insurer, and USNR and its affiliates, as *named insureds,* agreed that:

> The company may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, the *named insured* shall promptly reimburse the company for such part of the deductible amount as has been paid by the company. (Emphasis in original.)

Thus, the plain language of the CGL policy imposes the burden of reimbursing the deductible on the party qualifying as "named insured," as defined, and not on those qualifying as "persons insured," "insured," or "additional persons insured—required by contract" as defined elsewhere in the contract. I conclude that USNR, not Highlands or Temple–Eastex, was obligated to reimburse Hartford for the deductible.

IV. *USNR's Bad Faith Argument.*

■ Finally, USNR contends that Hartford's settlement of Richardson's claim without prior notice to or consent from USNR constitutes bad faith and precludes recovery of the deductible. In response, Hartford argues that under the plain language of the insurance policy, it had a right to settle Richardson's claim as it "deem[ed] expedient" and was not required to first notify USNR or obtain its consent to the settlement.

The CGL policy provides, in relevant part: [T]he company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, *and may make such investigation and settlement of any claim or suit as it deems expedient * * *.* (Emphasis added; original italics deleted.)

As discussed above, the CGL policy also grants Hartford the right to pay all or part of the deductible to settle a claim, and requires the named insured, "after notification of the action taken," to reimburse Hartford for the amount of the deductible paid. Nothing in the policy language requires Hartford to notify the named insured or obtain its consent in advance of the settlement. The use of the past-tense in "notification of the action *taken*" plainly contemplates that notice to the named insured will follow, not precede, payment.

The parties also entered into a Claims Fund Agreement that states, among other things, that Hartford shall handle all claims and pay all settlements against the insured "which under the deductible provisions of the policy are Insured's ultimate responsibility, in the same manner as if they were Hartford's responsibility under the policy * * *." The agreement further specifies that Hartford's obligation with respect to such claims "shall be to handle them in a reasonable manner in accordance with accepted claims handling practices, and * * * settlement, or payment by Hartford shall be prima facie evidence of the reasonableness thereof * * *." The Claims Fund Agreement thus expressly authorizes Hartford to deal with claims within the deductible amount in the same manner it deals with claims outside the deductible amount, *i.e.,* as it "deems expedient" and as if they were "Hartford's responsibility under the policy."

■ Although the plain language of the CGL policy does not require Hartford to provide notice or obtain consent before settling a claim, USNR nonetheless urges the

court to apply a "good faith and fair dealing" analysis to Hartford's performance under the policy and, in effect, read into the policy a requirement of pre-payment notice and consent.

The parties each cite cases from other jurisdictions to support their arguments for or against an implied pre-payment notice and consent requirement. *Compare St. Paul Fire & Marine Ins. Co. v. Edge Memorial Hosp.,* 584 So.2d 1316, 1327 (Ala.1991), cited by USNR (where the insured must itself pay the amount of the deductible included in the settlement, a reasonable construction of the policy is that the insurer cannot agree to pay money in a settlement without first obtaining the consent of the insured), *with Hendrix v. City of New Orleans,* 562 So.2d 1164, 1167 (La.App.1990), cited by Hartford (interpreting policy language similar to the CGL policy to "clearly contemplate[ ] [that] payment and settlement by the insurer may certainly precede notification to the insured and a request for reimbursement"); *see also* Annot., *Insurer's Settlement Liability,* 18 A.L.R.5th 474 § 8 (1994), and the cases cited therein.

The parties have not cited any Oregon authority on this issue. The Oregon Supreme Court has declared generally that a " 'covenant of good faith and fair dealing' " is implied in every contract. *Sheets v. Knight,* 308 Or. 220, 233, 779 P.2d 1000 (1989), *citing,* among other cases, *Best v. U.S. National Bank,* 303 Or. 557, 561, 739 P.2d 554 (1987). In *Sheets,* however, the court made it abundantly clear that while a duty of good faith and fair dealing exists, it cannot be used to vary the express terms of a written agreement. The court explained:

> The law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract *where it is consistent with and in furtherance of the agreed-upon terms of the contract* or where it effectuates "the reasonable contractual expectations of the parties." *Sheets,* 308 Or. at 233, 779 P.2d 1000 (emphasis added), *quoting Best,* 303 Or. at 563, 739 P.2d 554.

I conclude that Oregon law does not allow a *de facto* amendment of the CGL policy by reading into it a notice and consent require-ment that is inconsistent with the policy's express terms. Under the CGL policy, Hartford was not required to notify USNR or obtain its consent before settling Richardson's claim. USNR has not presented any evidence that Hartford's handling of the Richardson claim was otherwise improper or outside Hartford's contractual authority.

This is not a situation where the insurer failed to settle within the policy limits and exposed the insured to excess liability. *See, e.g., Georgetown Realty v. The Home Ins. Co.,* 313 Or. 97, 831 P.2d 7 (1992). Moreover, USNR has not overcome the presumption set forth in the Claims Fund Agreement that the amount Hartford paid was reasonable. I conclude that Hartford acted properly and within its authority in settling Richardson's claim. Hartford is, therefore, entitled to judgment in its favor for the amount presently owing on the deductible, $228,143.45, together with interest at the rate of nine percent per annum from April 29, 1992.

## CONCLUSION

Hartford's motion for summary judgment (# 17) is GRANTED. USNR's cross-motion for summary judgment (# 30) is DENIED. Any other pending motions are denied as MOOT.

IT IS SO ORDERED.