**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 6, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MID-CONTINENT CASUALTY
COMPANY,

      Plaintiff - Appellant,

v.

GREATER MIDWEST BUILDERS,
LTD.; GREATER MISSOURI
BUILDERS, INC.,

      Defendants - Appellees.

No. 18-3113
(D.C. No. 2:17-CV-02561-JWL-GEB)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McKAY**, and **HOLMES**, Circuit Judges.

Plaintiff-Appellant Mid-Continent Casualty Company ("Mid-Continent")

seeks reversal of an order granting a motion to dismiss made by Defendants-

Appellees Greater Midwest Builders, Ltd. ("Greater Midwest") and Greater

Missouri Builders, Inc. ("Greater Missouri"), as well as an order denying Mid-

Continent's motion under Federal Rule of Civil Procedure ("Rule") 59(e) to alter

---

[*]      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

or amend the judgment of dismissal.  Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's rulings.

# I

## A

Mid-Continent contends that Greater Midwest and Greater Missouri, allegedly alter-egos of each other,[1] breached the terms of several functionally identical commercial general liability insurance policies (collectively, the "Policy") by failing to reimburse Mid-Continent for deductible amounts that it paid to settle certain litigation.  Thus, we review relevant Policy terms before turning to the events giving rise to this appeal.

The Policy generally requires Mid-Continent to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  Aplt.'s App. at 26 (Ex. A to Compl., filed Sept. 25, 2017).  According to the Policy's deductible endorsement, Mid-

---

[1] In a footnote, Greater Midwest and Greater Missouri object to Mid-Continent's "conflat[ion]" of Greater Midwest and Greater Missouri, arguing that they are two distinct entities.  Aplees.' Resp. Br. at 4 n.1.  However, the alter-ego status of the two entities was alleged in the Complaint, Aplt.'s App. at 8 (Compl., filed Sept. 25, 2017), and the district court expressly declined to find Mid-Continent's alter-ego allegations insufficient, *id.* at 694 (Mem. & Order, filed Feb. 12, 2018).  Moreover, aside from the aforementioned footnote, the parties do not meaningfully address alter-ego status or the district court's ruling thereupon. We therefore accept Mid-Continent's alter-ego allegations as true and sufficient for purposes of adjudicating this appeal.

2

Continent's obligation to pay damages on its insured's behalf "applies only to the amount of damages in excess of [a] deductible amount[]" (here, $1,000 "per claim" for "[p]roperty [d]amage [l]iability"). *Id.* at 20. The deductible endorsement also states that Mid-Continent "may pay any part or all of the deductible amount to effect settlement of any claim or 'suit' and, upon notification of the action taken, [the insured] shall promptly reimburse [Mid-Continent] for such part of the deductible amount as has been paid by [Mid-Continent]." *Id.* at 21. The Policy defines a "suit" as follows:

> "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
> > a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with [Mid-Continent's] consent; or
> >
> > b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with [Mid-Continent's] consent.

*Id.* at 40; *see also id.* (defining "[p]roperty damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," and "[l]oss of use of tangible property that is not physically injured").

3

**B**

Starting in or about 2000, Greater Missouri and Greater Midwest were engaged in the construction of townhomes at a Kansas real estate development.[2] Between 2004 and 2008, Mid-Continent provided liability insurance coverage to Greater Midwest under the Policy.

In 2007, a homeowners association and the individual owners of several of the townhomes (the "Homeowners Association" and "Individual Plaintiffs," respectively, and collectively, the "Kansas Plaintiffs") sued Greater Midwest and its president in Kansas state court for damages arising from water intrusion in the townhomes (the "Kansas Litigation").

Mid-Continent and State Auto, an insurer that had issued policies covering the first few years of the construction project (collectively, the "Insurers"), initially defended Greater Midwest and its president in the Kansas Litigation under a reservation of their rights to contest coverage.[3] Greater Midwest

---

[2] Because this case was dismissed under Rule 12(b)(6), we accept as true all well-pleaded factual allegations in the Complaint. *See, e.g.*, *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018). We also take judicial notice of certain state-court filings. *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008); *see also Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1503 (10th Cir. 1997) (observing that court may take judicial notice of "adjudicative facts at any stage of the proceedings").

[3] While the Kansas Litigation was pending, Mid-Continent brought an action in Kansas federal court seeking a declaration that it had no coverage obligations in the Kansas Litigation. *Mid-Continent Cas. Co. v. Greater Midwest*

(continued...)

4

ultimately rejected their defense, however. Instead, per the Complaint in this case,

> [Greater Midwest] entered into an agreement with the Kansas [Plaintiffs] to the effect that (1) [Greater Midwest] would not contest the claims by those plaintiffs at trial, and (2) they would only attempt to collect their judgment from [Greater Midwest] and Greater Missouri's available insurance coverage. Accordingly, judgment issued in the Kansas Litigation on the water intrusion claims.

*Id.* at 9.

The Kansas Plaintiffs then filed suit in Missouri state court (the "Missouri Litigation") to "collect on the judgment." *Id.* The Petition initiating that action designated Greater Midwest as a plaintiff and asserted no claims against Greater Midwest. A section of that Petition concerning a claim for "equitable garnishment" described the claim as being by only the Kansas Plaintiffs against the Insurers, but it also discussed Greater Midwest's negligent "acts and/or omissions" giving rise to the property damage at issue in the Kansas Litigation and asserted entitlement to equitable garnishment based on "the coverage afforded to [Greater Midwest]" under the Insurers' policies. *Id.* at 653–56 (Ex. B to Pl.'s

---

[3](...continued)
*Builders*, *Ltd.*, No. 09–2066–EFM, 2011 WL 5597329, at *1 (D. Kan. Nov. 17, 2011) (unpublished), *aff'd sub nom. Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977 (10th Cir. 2012). The district court stayed the action and later dismissed it without reaching the merits after a garnishment action was filed in Missouri state court as described *infra*. *Id.* at *1, *6.

Mem. in Opp'n to Mot. to Dismiss, filed Jan. 11, 2018) (Pet. in Mo. Lit.).[4]

During the pendency of the Missouri Litigation, Greater Midwest was "realigned" as a defendant in connection with the equitable garnishment claim. *See id.* at 401 (Ex. D to Defs.' Mem. in Supp. of Mot. to Dismiss, filed Dec. 1, 2017) (Docket Sheet in Mo. Lit.); *see also id.* at 10 (alleging that, "[f]or purposes of the garnishment claim, [Greater Midwest] was aligned as a defendant").[5]

The Missouri trial court ultimately entered judgment on the equitable garnishment claim against the Insurers, expressly allocating liability between Mid-Continent and State Auto. Mid-Continent appealed, but the judgment was affirmed.[6]

---

[4] According to Mid-Continent, the remaining claims in the Petition—i.e., other than the equitable garnishment claim—were not "litigated to a conclusion," Aplt.'s Opening Br. at 10, and we do not consider them in adjudicating this appeal.

[5] In connection with the "realignment," the Missouri trial court cited Missouri Supreme Court Rule 52.06. That rule, entitled "Misjoinder and Nonjoinder of Parties," says the following: "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately." MO. SUP. CT. R. 52.06.

[6] While the appeal was pending, State Auto and the Homeowners Association reached a settlement. It also appears that the Individual Plaintiffs voluntarily dismissed their claims while the Missouri Litigation was pending in trial court.

Following post-judgment litigation, Mid-Continent eventually settled the Missouri Litigation. Specifically, according to the Complaint in this case, Mid-Continent "settled the garnishment claims in the [Missouri] Litigation, and paid over $5,000,000 to effectuate that settlement (which included [Mid-Continent's] proportionate share of the judgments for property damage determined in the Kansas Litigation plus interest)."[7] *Id.* at 11.

In November 2014, Greater Midwest filed a stipulation of dismissal with prejudice in the Missouri Litigation, the Homeowners Association filed a satisfaction of judgment in the Missouri Litigation, and the Homeowners Association filed a satisfaction of judgment in the Kansas Litigation.

---

[7] An alleged copy of the settlement agreement has been filed as part of Mid-Continent's Appendix, but the parties dispute whether it was properly before the district court. We deem it unnecessary for us to consider the precise terms of the agreement. As we read the record, the agreement was not provided to the district court prior to its ruling on the motion to dismiss. *See* 5A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1327, Westlaw (database updated Aug. 2019) (stating that "[m]ere reference to the existence of a document that has not been attached usually is not sufficient" to require a court to consider the document). Instead, the settlement agreement was provided to the district court for the first time in connection with the Rule 59(e) motion, *see* Aplt.'s Reply Br. at 4 (arguing that agreement was provided to the district court and citing portion of Appendix containing exhibits to Rule 59(e) motion); however, typically, new evidence can justify granting a Rule 59(e) motion only where the evidence was "newly discovered" or "previously unavailable," 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2810.1, Westlaw (database updated Aug. 2019); *accord Monge v. RG Petro-Mach. Grp. Co.*, 701 F.3d 598, 611 (10th Cir. 2012)—a standard that the settlement agreement has not been shown to satisfy.

In 2017, Mid-Continent filed this action, claiming that Greater Midwest and Greater Missouri (again, allegedly alter-egos of each other) had failed to reimburse Mid-Continent for deductible amounts "arising from the property damage claims made in the Kansas [L]itigation and the settlement of the [Missouri] [L]itigation." *Id.* at 12. Greater Midwest and Greater Missouri moved to dismiss, arguing among other things that Mid-Continent had not settled a claim or suit *against Greater Midwest*, but rather had settled and secured a release of further claims *against itself*. Also, according to Greater Midwest and Greater Missouri, Mid-Continent had not shown that Greater Midwest "benefit[ted] from" settlement of the Missouri Litigation. *Id.* at 316 (Defs.' Mem. in Supp. of Mot. to Dismiss, filed Dec. 1, 2017). Mid-Continent opposed, arguing that, by its plain terms, the Policy did not limit the reimbursement obligation to a settlement that was "for the benefit of" Greater Midwest. *Id.* at 643–45 (Pl.'s Mem. in Opp'n to Mot. to Dismiss, filed Jan. 11, 2018).

The district court granted the motion to dismiss and entered judgment. In its view, "the only reasonable interpretation" of the Policy was that "the reimbursement obligation arises only in the context of a settlement by the insurer of a claim or suit *against the insured*." *Id.* at 705 (Mem. & Order, filed Feb. 12, 2018) (emphasis added). It reasoned that "[t]he only occasion in which an insured would need to reimburse the insurer for deductibles would be when the

8

insurer paid a claimant to settle a liability owed by the insured." *Id.* Here, the district court ruled the Homeowners Association had "already secured a judgment against" Greater Midwest, which Greater Midwest had "already satisfied" by its settlement with the Homeowners Association. *Id*. Thus, when Mid-Continent later settled with the Homeowners Association, it was not paying a judgment or settling liability against Greater Midwest, but rather was settling its own liability in the Missouri Litigation. In describing the parties' arguments, the district court noted Greater Midwest and Greater Missouri's argument that the reimbursement provision applies where "the insurer has settled a claim against the insured, *thereby benefitting the insured*." *Id.* at 704 (emphasis added).

Mid-Continent filed a timely Rule 59(e) motion to alter or amend the judgment, arguing that the district court erred in determining that the reimbursement obligation applied only if Mid-Continent settled a suit against, or for the benefit of, Greater Midwest and in determining that Greater Midwest satisfied the judgment in the Kansas Litigation before the settlement of the Missouri Litigation. The district court denied the Rule 59(e) motion on grounds mirroring those undergirding the initial dismissal ruling. Notably, it stated that its prior ruling turned on whether Mid-Continent was settling a suit *against* an insured, not whether Mid-Continent's settlement *benefitted* an insured, but it also stated that Mid-Continent had "still not explained how" Greater Midwest

9

benefitted from the settlement "in any real sense." *Id.* at 959–60 (Mem. & Order, dated Apr. 30, 2018). The district court also observed that, prior to the Missouri Litigation, the Kansas Plaintiffs had already "agreed not to execute against [Greater Midwest]" and to limit collection efforts to the Insurers, and Greater Midwest's liability would thus not be changed regardless of the outcome of the Missouri Litigation. *Id.* at 960.

Mid-Continent timely appealed.

## II

### A

We review a district court's dismissal of an action under Rule 12(b)(6) de novo. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). In doing so, we accept as true "all well-pleaded allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)). "To defeat a motion to dismiss, a complaint must plead facts sufficient 'to state a "claim to relief that is plausible on its face."'" *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[8]

---

[8] The Motion to Dismiss was styled in part as a motion for judgment on the pleadings, but the district court correctly considered the motion under the
(continued...)

We review an order denying a Rule 59(e) motion to alter or amend the judgment for an abuse of discretion. *See Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000). "A court abuses its discretion only when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (per curiam) (quoting *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007)). However, when a district court errs in deciding a legal issue, it necessarily abuses its discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996). Our abuse-of-discretion review accordingly "includes review of any legal conclusions de novo." *United States v. Ray*, 704 F.3d 1307, 1315 (10th Cir. 2013).[9]

---

[8](...continued)
standards applicable to a motion to dismiss because the pleadings were not closed. In any event, our review of a ruling on that motion would be the same under either standard. *See Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013), *as amended on denial of reh'g* (Jan. 8, 2014).

[9] Greater Midwest and Greater Missouri cite *Devon Energy Production Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195 (10th Cir. 2012), and *Huebner v. Rosen*, 81 F. App'x 276 (10th Cir. 2003) (unpublished), for the proposition that de novo review of a Rule 59(e) motion to alter or amend a judgment is limited to issues "of pure jurisdiction and proper service of process." Aplees.' Resp. Br. at 14 n.3. We disagree. First, the principles that generally apply to abuse-of-discretion review are to the contrary, as set forth *supra*. Second, *Devon Energy* actually suggested that de novo review applies to *any* "legal conclusion[]"; it just so happened that the legal conclusion at issue in that
(continued...)

11

**B**

Mid-Continent makes two overarching claims of error on appeal. First, it contends that the district court's interpretation of the operation of the Policy is inconsistent with the Policy's plain terms, especially its broad definition of the term "suit." Aplt.'s Opening Br. at 22–23. Second, it contends that the district court made "incorrect," "unsupported," and "premature" factual determinations in the context of a Rule 12(b)(6) motion. *Id.* at 35. That is, even if a reimbursement obligation would have been triggered only by settlement of a claim or suit against, or for the benefit of, Greater Midwest, the district court "all but ignored" Greater Midwest's status as a defendant in the Missouri Litigation and overlooked that the settlement benefitted Greater Midwest in the Kansas Litigation. *Id.* at 34.

For reasons set forth below, we disagree with Mid-Continent and reject its claims of error.

---

[9](...continued)
case was a jurisdictional one. 693 F.3d at 1201–02 ("We typically review a district court's dismissal of a Rule 59(e) motion only for abuse of discretion. However, '[t]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.' Consequently, we are obliged to review the merits of purely legal jurisdictional arguments de novo." (citations omitted, alteration in original)). Third, *Huebner* appeared to analyze the legal issues in the case under a de novo standard, *see* 81 F. App'x at 278–79, and, in any event, the case is unpublished and not binding on us. Thus, we analyze legal issues presented by the Rule 59(e) ruling de novo.

**1**

Mid-Continent's first allegations of error concern the proper interpretation of the Policy. Because the district court exercised diversity jurisdiction under 28 U.S.C. § 1332(a), substantive issues like this one are governed by state law. *See, e.g., Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1202–03 (10th Cir. 2012). Here, as in district court, the parties agree that Missouri law applies, and we see no basis upon which to depart from that understanding. *See N. Am. Specialty Ins. Co. v. Corr. Med. Servs., Inc.*, 527 F.3d 1033, 1040 n.5 (10th Cir. 2008) (applying Missouri law in an insurance case because the district court applied it and because the parties did not dispute that decision on appeal, as "appellate courts do not normally address choice of law issues sua sponte where [the] parties acquiesce in application of a certain state's law").

Under Missouri law, the interpretation of an insurance policy, and the determination of whether coverage and exclusion provisions are ambiguous, are questions of law. *See Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010). "The provisions of an insurance policy are read in the context of the policy as a whole." *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. 1998); *accord Maher Bros., Inc. v. Quinn Pork, LLC*, 512 S.W.3d 851, 855 (Mo. Ct. App. 2017). Policy language is "given its ordinary meaning unless another meaning is plainly intended." *Columbia Mut. Ins.*, 967 S.W.2d at 77.

Absent a statute or public policy requiring coverage, where insurance policies are unambiguous, they will be enforced as written. *Peters v. Emp'rs Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. 1993); *accord State Farm Mut. Auto. Ins. Co. v. Ballmer*, 899 S.W.2d 523, 525 (Mo. 1995) ("[C]onstruction of insurance contracts is unnecessary when a contract provision is clear and unambiguous."). "A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or[] in order to enforce a particular construction which it might feel is more appropriate." *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. 1991); *see also Ballmer*, 899 S.W.2d at 525 ("If a term within an insurance policy is clearly defined, the contract definition controls."). Policy "[l]anguage is ambiguous if it is reasonably open to different constructions." *Lincoln Cty. Ambulance Dist. v. Pac. Emp'rs Ins. Co.*, 15 S.W.3d 739, 743 (Mo. Ct. App. 1998).

"Exceptions and limitations contained in insurance policies should be construed strictly against the insurer." *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 209 (Mo. Ct. App. 1995); *see also Crossman v. Yacubovich*, 290 S.W.3d 775, 779 (Mo. Ct. App. 2009) ("[P]rovisions limiting or cutting down, or avoiding liability in the coverage made in the policy are construed most strongly against the insurer." (alteration in original)).

14

This case also requires us to consider the nature of an "equitable garnishment" action under Missouri law. To wit, an equitable garnishment action under Missouri Revised Statutes section 379.200 is "a suit in equity against the insurance company to seek satisfaction of one's judgment under an insurance policy." *Zink v. Emp'rs Mut. Liab. Ins. Co. of Wis.*, 724 S.W.2d 561, 564 (Mo. Ct. App. 1986), *overruled on other grounds by Johnston v. Sweany*, 68 S.W.3d 398 (Mo. 2002). "In an equitable garnishment action brought directly against an insurer, the plaintiff must prove that a judgment was obtained against an insurance company's insured during the policy period and that the injury is covered by the policy." *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. 2015).

Here, the district court concluded that the "only reasonable interpretation" of the Policy was that "the reimbursement obligation arises only in the context of a settlement by the insurer of a claim or suit *against the insured*," as "[t]he only occasion in which an insured would need to reimburse the insurer for deductibles would be when the insurer paid a claimant to settle a liability *owed by the insured*." Aplt.'s App. at 705 (emphases added). It reiterated its stance in the Rule 59(e) ruling, stating that "the need for reimbursement would arise only in the event that [Mid-Continent] settled an underlying claim against an insured." *Id.* at 957.

15

Mid-Continent contends, repeatedly and at length, that the district court's interpretation is untenable simply in light of the broad, clear terms of the Policy (especially the meaning of "suit," i.e., "a civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are alleged," *id.* at 40), which does not cause a reimbursement obligation to turn on the identity of the entity sued or whether the insured "benefitted" from the settlement. Aplt.'s Opening Br. at 24–25; *see also id.* at 26 (arguing that Policy's definition of "suit" is "clear and unambiguous" and "does not involve or relate to the identity of the defendant in a suit"); *id.* at 28 ("[I]f the defined term 'suit' was intended to be limited to only include suits against the named insured, it would have been defined in that manner. . . . [I]nstead[,] 'suit' was broadly defined, so the plain language of the defined term only requires that the 'suit' in question is brought because of property damage covered by the Policy."); Aplt.'s Reply Br. at 18 (similar). Mid-Continent also observes that the Policy sometimes uses "the insured" to qualify "suit," which would be unnecessary if a suit is *definitionally* against an insured. *See* Aplt.'s Opening Br. at 27–29 & n.18; *see also* Aplt.'s App. at 21 (providing that the terms of the Policy, including the duty to defend "the insured against any 'suits'" seeking certain damages, apply irrespective of the application of a deductible); Aplt.'s App. at 26 (providing that Mid-Continent will defend "the insured" against "any 'suit'" seeking damages arising from, *inter*

16

*alia*, property damage to which the Policy applies); Aplt.'s App. at 32 (providing for certain supplementary payments by Mid-Continent with respect to "any 'suit' against an insured" it defends).[10]

We disagree with Mid-Continent. First, we observe that substantial portions of Mid-Continent's briefing (indeed, on both of its claims of error) concern whether a "benefit" to Greater Midwest was necessary to give rise to a reimbursement obligation. *See, e.g.*, Aplt.'s Opening Br. at 19 (characterizing district court as ruling "that the 'suit' must be against [Greater Midwest], *which*

---

[10] Mid-Continent also cites *Hartford Accident & Indemnity Co. v. U.S. Natural Resources, Inc.*, 897 F. Supp. 466 (D. Or. 1995), and *Barletta Heavy Division, Inc. v. Layne Christensen Co.*, Civ. A. No. 07–12084–DPW, 2011 WL 1399692 (D. Mass. Apr. 13, 2011) (unpublished), for the general proposition that a settled "suit" need not necessarily be against the *named* insured, Aplt.'s Opening Br. at 29–30; Aplt.'s Reply Br. at 20 n.19. We acknowledge this general principle, but, as Greater Midwest and Greater Missouri point out, the facts of these cases are not closely analogous to the facts here, as these cases did not, as here, involve a Missouri equitable garnishment action where the insurer "settled a claim on its own behalf" instead of effecting "a settlement of a covered claim against *an insured*." Aplees.' Resp. Br. at 21–22.

We take a somewhat similar view of *Sauvain v. Acceptance Indemnity Insurance Co.*, 500 S.W.3d 893 (Mo. Ct. App. 2016). That is, we acknowledge the case's general statements that a Missouri equitable garnishment action "is a direct cause of action against an insurance company," "asserts a separate and distinct claim or claims against an insurer," and "seeks judgment directly against the insurer." *Id.* at 899. Indeed, these statements are far more informative than those in *Hartford Accident* and *Barletta*; at the least, *Sauvain* sheds some light on the nature of an equitable garnishment action under Missouri law. That said, we also note that *Sauvain* made its pronouncements in analyzing an issue not presented in this case, i.e., the differences between an equitable garnishment action and a garnishment-in-aid-of-execution proceeding. *Id.* at 898.

17

*must benefit from its settlement*" and arguing that, "as a matter of law and as a matter of fact, the settlement of the [Missouri] Litigation undeniably *conferred benefits on* [Greater Midwest]" (emphases added)); *see also* Aplt.'s Reply Br. at 3–10 (arguing that a copy of the settlement agreement in the Missouri Litigation was provided to the district court and shows that the settlement benefitted Greater Midwest). We agree with Greater Midwest and Greater Missouri, however, that the district court clearly did not require a "benefit" to Greater Midwest in addition to requiring that the settlement be "of a claim or suit against the insured." Aplt.'s App. at 705; *see also* Aplees.' Resp. Br. at 28–29. The only appearances of the alleged "benefit" requirement in the district court's original ruling simply described the arguments of the parties; although the district court turned immediately from describing these arguments to saying that it "agree[d] with" Greater Midwest and Greater Missouri, it made clear that its agreed *insofar as* "the reimbursement obligation arises only in the context of a settlement by the insurer of a claim or suit *against the insured*." Aplt.'s App. at 704–05 (emphasis added).

Any lingering doubt as to the basis for the district court's first ruling was dispelled by its later ruling, where it flatly stated that it "did not include such a requirement [i.e., of a benefit to Greater Midwest] in its interpretation." *Id.* at 959. Of course, it later observed, apparently in the alternative, that Mid-

18

Continent had "still not explained how [Greater Midwest] benefitted from [Mid-Continent's] settlement in any real sense." *Id.* at 960. However, the district court was emphatic that "the key for purposes of [its] interpretation is the fact that the settled claim was one against an insured." *Id.* at 959.

In short, the appealed rulings were not premised upon the notion that the settlement of the Missouri Litigation needed to *benefit* Greater Midwest to give rise to a reimbursement obligation. Particularly because the rationale the district court actually relied on was sound, we see no need to grapple with what is at most a possible alternative basis for affirmance. *See, e.g.*, *United States v. Ackerman*, 831 F.3d 1292, 1305 (10th Cir. 2016) (observing that "we may of course affirm the district court's judgment on any basis the record supports").

Instead, as we stated previously, the district court ruled that the reimbursement obligation arises only upon settlement "by the insurer of a claim or suit against the insured." Aplt.'s App. at 705. We see no error in this ruling. The reimbursement obligation is governed by the deductible endorsement which, by its terms, concerns the Policy's treatment of certain losses *by the insured*. As the district court recognized, the entire operation of the deductible endorsement contemplates the payment of "[]covered[] amounts paid by the insured, less the deductible amounts." *Id.*; *see also Deductible*, BLACK'S LAW DICTIONARY 519

19

(11th ed. 2019) ("Under an insurance policy, the *portion of the loss* to be borne by the insured before the insurer becomes liable for payment." (emphasis added)).

Similarly, while the Policy's definition of "suit" is certainly broad as to the types of proceedings that qualify as "suits," a "suit" must still allege "damages because of . . . 'property damage' . . . to which this insurance applies." Aplt.'s App. at 40; *see also* Aplees.' Resp. Br. at 19–20. In other words, especially when read "in the context of the policy as a whole," *Columbia Mut. Ins.*, 967 S.W.2d at 77, the deductible endorsement (including the reimbursement provision contained therein) can fairly be read as tethered directly to the losses and liabilities *of the insured*, and the district court did not err in ruling that a claim or suit *against the insured* was accordingly necessary to give rise to a reimbursement obligation, *see* Aplt.'s App. at 706 (ruling that deductible endorsement must be interpreted "in th[e] context" of the Policy's role in "cover[ing] damages caused by the insured"). Furthermore, although, as Mid-Continent correctly notes, the district court did not rule *definitively* on the matter, Aplt.'s Opening Br. at 24–25, any ambiguity as to whether a reimbursement obligation arose here must be construed against Mid-Continent, *see Lincoln Cty. Ambulance Dist.*, 15 S.W.3d at 743; *Standard Artificial Limb*, 895 S.W.2d at 209; *see also Ackerman*, 831 F.3d at 1305 (permitting affirmance on any basis with record support).

20

The district court accordingly did not err in ruling that a reimbursement obligation arises only upon settlement by the insurer of a claim or suit *against the insured*.[11] We now consider Mid-Continent's remaining arguments, which broadly concern whether the district court erred in finding such a claim or suit absent here.

**2**

Mid-Continent also contends that the district court's rulings are premised upon factual errors. Aplt.'s Opening Br. at 18–20. Leaving aside arguments concerning whether the settlement benefitted Greater Midwest (because, as we found *supra*, such a requirement was not a necessary component of the district court's ruling),[12] Mid-Continent's argument seems to rest entirely on Greater

---

[11] In light of this ruling, we do not expressly address the remainder of Mid-Continent's analysis, i.e., that under *its* view of the Policy, settlement of the Missouri Litigation gave rise to a reimbursement obligation. *See* Aplt.'s Opening Br. at 31–34.

We note also that Mid-Continent obliquely suggests, in a lone footnote, that it should have received leave to amend its Complaint. *Id.* at 14 n.5. This footnote falls far short of adequately presenting any issue for our review, so we will not address it further. *See United States v. Fisher*, 805 F.3d 982, 991 (10th Cir. 2015) (observing that "we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief" (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007))).

[12] Mid-Continent's arguments concerning *premature* factfinding seem to focus exclusively on this ostensible "benefit" requirement, which we have shown the district court did not actually impose. *See* Aplt.'s Opening Br. at 40; Aplt.'s Reply Br. at 3.

21

Midwest's "realign[ment]" as a defendant as to the equitable garnishment claim in the Missouri Litigation. *Id.* at 19, 35–39.

We find no error in the district court's ruling. The Complaint alleged Greater Midwest's "align[ment] as a defendant" as to the equitable garnishment claim in the Missouri Litigation, Aplt.'s App. at 10, but provided no explanation as to how that could possibly constitute a claim or suit against Greater Midwest in light of the immediately preceding allegations that the Kansas Plaintiffs had agreed to collect their judgment *only* from Greater Midwest and Greater Missouri's *insurance* and that "collect[ing] on the judgment . . . against [Mid-Continent] and the other . . . insurer [i.e., State Auto]," was the purpose of the Missouri Litigation, *id.* at 9.

Delving into judicially noticeable state-court filings is of no assistance to Mid-Continent, as the equitable garnishment claim was initially described as being by only the Kansas Plaintiffs against only the Insurers. Moreover, state-court documents similarly do not suggest that "realigning" Greater Midwest as a defendant modified Greater Midwest's liability in that action. And, lastly, as Mid-Continent's Complaint acknowledged, the Missouri trial court ultimately entered judgment on the equitable garnishment claim solely against the Insurers.

In other words, whatever Greater Midwest's "alignment" in the Missouri Litigation might have been—including whether it was legally required to be

22

"aligned" with the Insurers, *see* MO. REV. STAT. § 379.200 (permitting a judgment creditor to "proceed in equity against the defendant [from an earlier liability suit] and the insurance company" in an equitable garnishment action); *see also Glover v. State Farm Fire & Cas. Co.*, 984 F.2d 259, 261 (8th Cir. 1993) (per curiam) (noting "seemingly clear" statutory language requiring joinder of the judgment debtor but acknowledging that an equitable garnishment action might "not expose the judgment debtor to any risk of additional liability")—we struggle to see how a cause of action initially naming *only* the Insurers and ultimately resulting in a judgment against *only* the Insurers, in the presence of an acknowledged agreement that the Kansas Plaintiffs would proceed *only* against the Insurers, can reasonably be characterized as satisfying the "claim or suit against the insured" requirement we approved of *supra. See also* Aplees.' Resp. Br. at 26–27 (characterizing the district court's "true holding" as being that the "realignment" did not "create additional liability"). Indeed, the district court sometimes described the Policy as requiring that the insurer settle a *liability* of the insured to give rise to a reimbursement obligation, Aplt.'s App. at 705; *see also* Aplt.'s Opening Br. at 37 (so characterizing district court's holding). And there is simply no suggestion that such liability was involved in the Missouri Litigation.

For the foregoing reasons, we rebuff Mid-Continent's second overarching claim of error.

## III

Having rejected Mid-Continent's claims of error, we **AFFIRM** the district

court's judgment.[13]


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge

---

[13] In light of this result, we need not consider Greater Midwest and Greater Missouri's arguments for affirmance on the alternative grounds of collateral estoppel or Mid-Continent's alleged failure to make a timely compulsory counterclaim. *See* Aplees.' Resp. Br. at 34.